OPINION
By the Court,
Shearing, C. J.:
In early July 1989, appellant Ronald J. Reingold (“Reingold”) and his son, Kevin Reingold (“Kevin”), visited Las Vegas from *969 their home in New York. On the morning of July 6, 1989, Reingold, Kevin, and two friends arrived at the waterpark owned by respondent Wet ’N Wild Nevada, Inc. (“Wet ’N Wild”). After enjoying two waterpark rides, the group decided to go on The Flumes, which was a very steep slide. After Reingold descended the slide, he landed in the catch pool at the bottom and proceeded to walk toward the edge of the pool to exit. The outermost part of the pool consists of an upward incline ending at the top of the pool in a rolled edge, leading to the concrete sidewalk surrounding the pool. A railing is situated on the sidewalk a few feet from the edge of the pool.
As he was walking up the incline toward the edge of the pool, Reingold was looking ahead when he suddenly slipped and fell, causing excruciating pain on his left side. When he tried to get up, the pain was so bad, he fell again, scraping his left knee on the concrete. He yelled for Kevin, who helped him over to the railing. Wet ’N Wild personnel took Reingold to the first aid station until an ambulance arrived and took him to the hospital. Reingold had suffered a broken left hip which required surgery that evening.
Reingold filed a complaint against Wet ’N Wild for negligence. After a trial in March, 1995, the jury returned a verdict for Wet ’N Wild and against Reingold, finding that Reingold was eighty percent at fault while Wet ’N Wild was only twenty percent negligent. Reingold appealed. The principal issues for this court to consider concern records of other accidents at Wet ’N Wild. In view of our decision on these issues, it is unnecessary to consider the remaining arguments.
Before trial, Reingold filed a motion titled “Motion in Limine as to Defendant’s Knowledge of Existence of Dangerous Condition,” asking the district court to admit evidence of both prior and subsequent accidents occurring at Wet ’N Wild. Both the title of the motion and the cases cited in support of the motion focused on the evidence being necessary to show the defendant’s prior knowledge of a dangerous condition. Subsequent accidents are irrelevant on the issue of prior notice. Consequently, the district court denied the admission of evidence regarding subsequent accidents. Reingold now argues that the district court’s refusal to admit the evidence of the subsequent accidents was error.
This court has previously held that evidence of subsequent, similar accidents involving the same condition may be relevant on the issues of causation and whether there is a defective and dangerous condition. Ginnis v. Mapes Hotel Corp., 86 Nev. 408, 415, 470 P.2d 135, 139 (1970). However, evidence of subsequent accidents may not be admitted to demonstrate a defendant’s *970 knowledge of the condition prior to the instant accident. See id.; B.E. Witkin, California Evidence § 353 (2d ed. 1966). Since Reingold’s motion sought to introduce evidence of subsequent accidents for the purpose of proving Wet ’N Wild’s knowledge of the dangerous condition, the trial court was correct in denying the admission of the subsequent accidents as irrelevant on that issue.
Before trial, Reingold propounded interrogatories upon Wet ’N Wild regarding any slip and fall accidents occurring between July 1984 and July 6, 1989. At trial, Gary Daning, the general manager of Wet ’N Wild, testified that any first aid logs are routinely destroyed every season. Therefore, the logs for 1989 and prior would have already been destroyed well before Wet ’N Wild received the July 3, 1991 complaint commencing suit.
At trial Reingold asked for the following jury instruction:
Where relevant evidence which would properly be part of the case is within the control of the party whose interest it would naturally be to produce it, and he fails to do so, without satisfactory explanation, the jury may draw an inference that such evidence would have been unfavorable to him.
The district court refused to give the proffered instruction on the grounds that there was no intent to willfully suppress the logs. NRS 47.250(3) does provide for a disputable presumption “[t]hat evidence willfully suppressed would be adverse if produced.” The district court apparently believed that “willful suppression” requires more than following the company’s normal records destruction policy. We disagree. There is no dispute that the records were “willfully” or intentionally destroyed. Wet ’N Wild claimed that all records are destroyed at the end of each season. This policy means that the accident records are destroyed even before the statute of limitations has run on any potential litigation for that season. It appears that this records destruction policy was deliberately designed to prevent production of records in any subsequent litigation. Deliberate destruction of records before the statute of limitations has run on the incidents described in those records amounts to suppression of evidence. If Wet ’N Wild chooses such a records destruction policy, it must accept the adverse inferences of the policy.
Generally, when relevant evidence is destroyed, a trier of fact may draw an adverse inference from the destruction. Akiona v. U.S., 938 F.2d 158, 161 (9th Cir. 1991).
*971 A trial court has broad discretion to permit such an adverse inference. Glover v. BIC Corp., 6 F.3d 1318, 1329 (9th Cir. 1993). In Glover, a jury instruction appeared to state that a finding of bad faith was a prerequisite to drawing an adverse inference. The Ninth Circuit noted that “simple notice of ‘potential relevance to the litigation’ ” was sufficient, and ordered the trial court to clarify the instruction on remand. Id. at 1329-30 (quoting Akiona, 938 F.2d at 161).
There are two policy rationales for the adverse inference. First, the evidentiary rationale springs from the notion that “a party with notice of an item’s possible relevance to litigation who proceeds nonetheless to destroy it is more likely to have been threatened by the evidence than a party in the same position who does not destroy it.” Welsh v. U.S., 844 F.2d 1239, 1246 (6th Cir. 1988). “The second rationale acts to deter parties from pretrial spoliation of evidence and serves as a penalty, placing the risk of an erroneous judgment on the party that wrongfully created the risk.” Id. (quotation omitted). Both rationales seem to apply to Wet ’N Wild.
For the foregoing reasons, we reverse the judgment of district court and remand for a new trial.
Springer and Maupin, JJ., concur.