117 P.3d 207 (2005)
Kimberly BASS-DAVIS, Appellant,
v.
Kathi DAVIS and Christopher E. Davis, Respondents.
No. 41015.
Supreme Court of Nevada.
August 11, 2005.
*208 Kirk-Hughes & Associates and Judith H. Braecklein and Geraldine Kirk-Hughes, Las Vegas, for Appellant.
Wilson, Elser, Moskowitz, Edelman & Dicker, LLP, and Gloria J. Sturman, Las Vegas, for Respondents.
Before ROSE, GIBBONS and HARDESTY, JJ.

OPINION
PER CURIAM.
In this appeal, we primarily consider whether evidence that is lost after being forwarded from franchisees to their franchisor is subject to an inference that the evidence would have been adverse if produced. We conclude that the inference should apply and therefore reverse.

FACTS
On January 11, 1999, appellant Kimberly Bass-Davis slipped and fell on a wet floor inside a Las Vegas 7-Eleven convenience store. Bass-Davis claimed that she slipped because a 7-Eleven employee mopped the floor but failed to post warning signs. When Bass-Davis slipped, she fell forward, landing on her wrists and knees. Following the fall, she sought medical attention and was diagnosed with numerous injuries, the most serious being spondylolisthesis.[1]
Doctors instructed Bass-Davis to wear a back brace and referred her to physical therapy. Despite physical therapy, Bass-Davis continued to experience extreme pain that prevented her from performing routine tasks at home and work. Further tests revealed that Bass-Davis suffered from "early degenerative disc disease," and her doctors recommended surgery to fuse the damaged vertebrae. Though the fusion surgery was successful, Bass-Davis may never regain her prior level of health and activity. Bass-Davis incurred medical bills in excess of $201,000.
Approximately fourteen months after the fall, Bass-Davis filed a complaint in district *209 court, alleging that her injuries were caused by the negligence of Southland Corporation, doing business as 7-Eleven stores. The complaint also named Doe defendants and Roe corporations. Southland answered the complaint and denied liability. Approximately five months after filing the complaint, Bass-Davis filed a stipulation and order dismissing Southland without prejudice from the action. Bass-Davis then filed an amended complaint naming the franchise operators, Kathi and Christopher Davis (the franchisees), as Doe defendants 1 and 2.
During discovery, Bass-Davis learned that the franchisees could not locate the surveillance videotape and the employment records from the time of the accident or the original incident report prepared by the employee on duty at the time of the fall. Furthermore, the franchisees could not locate Janet Lanyon, an employee who was on duty at the time of the accident.
On June 25, 2002, Bass-Davis moved the district court for partial summary judgment as to liability. She argued that partial summary judgment was appropriate on the issue of liability because the franchisees' willful failure to preserve evidence rendered it impossible for her to prove her case. The franchisees opposed Bass-Davis' motion and argued that summary judgment was inappropriate because Bass-Davis had failed to prove that the evidence was willfully lost.
The district court denied Bass-Davis' motions without elaboration and ordered that the case proceed to trial. Bass-Davis' theory of the case was that the franchisees were liable for her injuries because their employees had failed to post warning signs that the floor was wet from mopping. That theory was supported by the testimony of Bass-Davis and Aldora Lewis, a woman who was at the store when Bass-Davis fell. The franchisees' theory was that warning signs were posted at the time of the fall. The franchisees testified at trial that it was the normal practice for employees to post warning signs when they mopped the floors. However, the franchisees were not in the store when Bass-Davis fell.
During cross-examination of Bass-Davis, the franchisees' counsel asked her whether she "received a paycheck" during the four-month leave of absence she took from her employment following surgery. The question was apparently asked to impeach Bass-Davis on her claim for lost wages. Bass-Davis admitted that she had "received a paycheck." Bass-Davis' counsel objected because the question called for collateral source evidence. The district court overruled the objection noting, "I think it's proper to ask that question." The jury returned a verdict for the franchisees.
After the district court entered the judgment, Bass-Davis filed concurrent motions for a new trial or judgment notwithstanding the verdict. The franchisees opposed the motions and argued that none of Bass-Davis' allegations justified a new trial. The district court ultimately denied Bass-Davis' motions. On appeal, Bass-Davis argues that the district court abused its discretion by (1) failing to instruct the jury on spoliation of evidence and (2) failing to grant her motion for a new trial based on the introduction of collateral source evidence at trial.

DISCUSSION

Spoliation of evidence jury instruction
Bass-Davis argues that the jury should have been instructed by the district court at her request that there is a rebuttable presumption that lost evidence was harmful to the losing party. We agree in part.
"It is well established that a party is entitled to jury instructions on every theory of her case that is supported by the evidence."[2] In Reingold v. Wet `N Wild Nevada, Inc., we recognized that under NRS 47.250(3), when evidence is willfully destroyed, the trier of fact is entitled to presume that the evidence was adverse to the destroying party.[3] We further held that evidence is "willfully" destroyed even if the *210 evidence is destroyed pursuant to an established company policy.[4]
Here, approximately one week after she fell, Bass-Davis contacted the franchisees and requested copies of the store's incident report regarding her fall and the surveillance videotape from inside the store. The franchisees referred Bass-Davis to a Southland employee. Bass-Davis contacted the Southland employee and repeated her request, but she was never provided with either piece of evidence. Christopher Davis testified that the incident report was mailed to Southland, according to then corporate policy. He further testified that Southland received the surveillance videotape. Southland then forwarded the videotape to its insurance company. The insurer apparently lost the videotape.
At the conclusion of trial, Bass-Davis offered the following jury instruction which was marked as proposed Instruction C:
Where relevant evidence which would properly be part of this litigation is within the control of the defendants whose interest it would naturally be to produce it, and they fail to do so without a satisfactory explanation, the jury may draw an inference that such evidence would have been unfavorable to the defendants.[5]
The district court refused this instruction. In her subsequent motion for a new trial under NRCP 59(a)(1), Bass-Davis asserted that this refusal constituted an abuse of discretion. The district court denied her motion. We conclude that Bass-Davis was entitled to a jury instruction regarding the spoliation of evidence inference and that the district court's refusal to so instruct the jury is grounds for a new trial.
Our holding in Reingold relied, in part, on NRS 47.250(3) which provides a rebuttable presumption "[t]hat evidence willfully suppressed would be adverse if produced." In this case, the evidence was not willfully suppressed; it was lost after the franchisees forwarded it to Southland pursuant to corporate policy. Since there is no evidence of willful suppression by Southland or its insurer, we conclude that it would be improper to apply the statutory rebuttable presumption in this case.
Nevertheless, we agree with Bass-Davis that based upon the facts of this case the franchisees should be responsible for the fact that the evidence was lost.[6] Though the franchisees did not lose the evidence themselves, they did provide the evidence to Southland, which forwarded the evidence to its insurer, which, in turn, lost the evidence. For the purposes of safeguarding the videotape evidence, both Southland and its insurer were agents of the franchisees. The franchisees could have preserved the evidence by copying it before they forwarded it to their agents. Since they failed to do so, they are responsible for their agents' loss of the evidence.
Other jurisdictions have recognized that the common law will infer that lost or destroyed evidence is adverse to the party who lost or destroyed it.[7] That inference rests on an acknowledgement that spoliation of evidence has a "`devastating effect' . . . on the administration of justice."[8] "Thus, once a party has notice of a potential claim, that party has a duty to exercise reasonable care to preserve information relevant to that claim."[9]
*211 We find this reasoning persuasive for cases such as this where there is no willful destruction of evidence. To hold otherwise would encourage potential defendants to forward damaging evidence to their insurers who could "lose" the evidence without any negative effect on the potential defendants. To avoid such an injustice, the following jury instruction shall be given when evidence which should have been preserved for trial is lost or destroyed but there is no evidence of willful suppression: "You may infer that lost or destroyed evidence is unfavorable to the party who could have produced it and did not, if the evidence was (a) under the party's control and reasonably available to it and not reasonably available to the adverse party, and (b) lost or destroyed without satisfactory explanation after the party knew or should have known of the existence of the claim."

Collateral source rule
Bass-Davis also argues that she was entitled to a new trial because the district court admitted collateral source evidence. We agree.
NRCP 59(a)(7) authorizes a party to move the district court for a new trial if an error in law occurred during the trial and the moving party objected to that error. "The decision to grant or deny a motion for a new trial rests within the sound discretion of the trial court, and this court will not disturb that decision absent palpable abuse."[10]
The collateral source rule prohibits the jury from reducing the plaintiff's damages on the ground that he received compensation for his injuries from a source other than the tortfeasor.[11] In Proctor v. Castelletti, we adopted a per se rule prohibiting "the admission of a collateral source of payment for an injury into evidence for any purpose."[12] Collateral source evidence is prohibited because it "inevitably prejudices the jury . . . [and] greatly increases the likelihood that a jury will reduce a plaintiff's award of damages because it knows the plaintiff is already receiving compensation."[13] In Proctor, we held that the appellant was entitled to a new trial because the district court's admission of collateral source evidence affected her "right to a fair trial and . . . to be fairly compensated for her injuries."[14]
Here, Bass-Davis sought damages for lost wages. During cross-examination, the franchisees' counsel asked Bass-Davis whether she "received a paycheck" during the four-month leave of absence she took from her employment following surgery. Bass-Davis admitted that she had. Bass-Davis' collateral source rule objection was overruled. We conclude that this scenario fits squarely within the collateral source rule.
It was error for the district court to admit evidence that Bass-Davis received compensation from her employer during her leave of absence. The district court's admission of this evidence damaged Bass-Davis' credibility in the eyes of the jury because it suggested that Bass-Davis brought a claim for which she had already been compensated. The admission also inherently prejudiced Bass-Davis' right to be fairly compensated for injuries caused by the defendant.[15] The admission of collateral source evidence can only be cured by a new trial.

Bass-Davis' remaining claims
Bass-Davis raises several additional assignments of error regarding the district court's denial of her pre- and post-trial motions. Since we have already determined that Bass-Davis is entitled to a new trial, we need not consider these additional assignments of error.

CONCLUSION
We conclude that the district court abused its discretion by failing to instruct the jury *212 on spoliation of evidence. We further conclude that the district court abused its discretion by denying Bass-Davis' motion for a new trial. Bass-Davis is also entitled to a new trial under NRCP 59(a)(7) because the district court admitted evidence of a collateral source of payment. Accordingly, we reverse the judgment and order of the district court and remand for a new trial consistent with this opinion.
NOTES
[1] This condition is caused by the "forward movement of the body of one of the lower lumbar vertebrae on the vertebra below it." Stedman's Medical Dictionary 1319 (4th ed.1976).
[2] Johnson v. Egtedar, 112 Nev. 428, 432, 915 P.2d 271, 273 (1996).
[3] 113 Nev. 967, 970, 944 P.2d 800, 802 (1997).
[4] Id.
[5] This instruction was apparently taken verbatim from the appellant's proposed instruction in Reingold, 113 Nev. at 970, 944 P.2d at 802.
[6] This court may grant an appropriate remedy even if the appellant is not entitled to the precise relief sought. See, e.g., Jaksich v. Guisti, 36 Nev. 104, 110-14, 134 P. 452, 454-55 (1913). Thus, though Bass-Davis is not entitled to the exact instructions that she proposed at trial, she is entitled to a jury instruction on spoliation of evidence.
[7] See, e.g., Miller v. Montgomery County, 64 Md.App. 202, 494 A.2d 761, 768 (Ct.Spec.App.1985); Dowdle Butane Gas Co., Inc. v. Moore, 831 So.2d 1124, 1127 (Miss.2002); Offshore Pipelines, Inc. v. Schooley, 984 S.W.2d 654, 666 (Tex.App.1998).
[8] Offshore Pipelines, 984 S.W.2d at 666 (quoting Trevino v. Ortega, 969 S.W.2d 950, 954 (Tex.1998) (Baker, J., concurring)).
[9] Id.
[10] Edwards Indus. v. DTE/BTE, Inc., 112 Nev. 1025, 1036, 923 P.2d 569, 576 (1996).
[11] Proctor v. Castelletti, 112 Nev. 88, 90 n. 1, 911 P.2d 853, 854 n. 1 (1996).
[12] Id. at 90, 911 P.2d at 854.
[13] Id.
[14] Id. at 91, 911 P.2d at 854.
[15] Id. at 90, 911 P.2d at 854.