KIMBERLY BASS-DAVIS, Appellant, *v.* KATHI DAVIS AND CHRISTOPHER E. DAVIS, Respondents.

No. 41015

May 11, 2006 134 P.3d 103

---

*Kirk-Hughes & Associates* and *Judith H. Braecklein* and *Geraldine Kirk-Hughes*, Las Vegas, for Appellant.

*Wilson, Elser, Moskowitz, Edelman & Dicker, LLP*, and *Gloria J. Sturman*, Las Vegas, for Respondents.

## OPINION

By the Court, GIBBONS, J.:

In this appeal, we primarily consider whether evidence that is lost after being forwarded from franchisees to their franchisor is subject to a permissive inference that the evidence would have been unfavorable if produced.

On August 11, 2005, a panel of this court issued an opinion in this case. The panel concluded that the lost evidence was not "willfully suppressed" but that, based upon the facts of this case, appellant Kimberly Bass-Davis was nonetheless entitled to an inference that the lost evidence would have been unfavorable to respondents, franchisees Kathi and Christopher Davis. The panel also endorsed a jury instruction to be given when evidence that should have been preserved for trial is lost or destroyed but no evidence

of willful suppression exists. The panel subsequently denied respondents' petition for rehearing, and the respondents then filed a petition for en banc reconsideration. Pending our consideration of the petition, we withdrew the panel's opinion on December 13, 2005. Having considered the petition, answer, and reply, we conclude that en banc reconsideration is warranted because this case involves a substantial precedential issue.[1] We therefore grant the petition and issue this opinion in place of the panel's withdrawn opinion.

In considering the issue of lost evidence, we necessarily revisit our 1997 decision in *Reingold v. Wet 'n Wild Nevada, Inc.*[2] In that case, we determined that the district court should have given a jury instruction allowing an adverse inference for lost evidence, as relevant evidence was spoliated when Wet 'n Wild followed its policy of routinely destroying records each season. We further concluded that Wet 'n Wild's evidence destruction was "willful" as defined by NRS 47.250(3), thus creating a rebuttable presumption that the evidence " 'would be adverse if produced.' "[3]

Given that *Reingold* seemingly embraced both an inference created by evidence not produced and a rebuttable presumption for evidence willfully suppressed, we take this opportunity to clarify that decision and conclude that a permissible inference that missing evidence would be adverse applies when evidence is negligently lost or destroyed. The NRS 47.250(3) presumption, on the other hand, applies only in cases involving willful suppression of evidence, in which the party destroying evidence intends to harm another party, *i.e.*, to obtain a competitive advantage in the matter. In this case, involving negligent loss of evidence, the district court abused its discretion by refusing to issue an adverse inference instruction or to consider other appropriate sanctions. We therefore reverse the judgment and order of the district court and remand for a new trial consistent with this opinion.

## FACTS

On January 11, 1999, appellant Kimberly Bass-Davis slipped and fell on a wet floor inside a 7-Eleven convenience store. Bass-Davis claims that she slipped because a 7-Eleven employee had mopped the floor but failed to post warning signs. After the fall, she sought medical attention and was diagnosed with numerous in-

---

[1] NRAP 40A(a). We deny Bass-Davis' request, included in her answer to the petition for en banc reconsideration, that this court sanction respondents for allegedly misleading arguments contained in the petition.

[2] 113 Nev. 967, 944 P.2d 800 (1997).

[3] *Id.* at 970, 944 P.2d at 802 (quoting NRS 47.250(3)).

juries, ultimately requiring surgery. Bass-Davis incurred medical bills in excess of $201,000.

Within one week of Bass-Davis' fall, Bass-Davis' sister contacted the franchise operators, Kathi and Christopher Davis (the franchisees) and requested copies of the store's incident report, documenting Bass-Davis' fall, and the surveillance videotape from inside the store. The franchisees referred Bass-Davis' sister to a Southland employee, whom she contacted, repeating her request to no avail. Bass-Davis later filed a complaint against the franchisees and, during discovery, she learned that the franchisees could not locate the surveillance videotape. Franchisee Christopher Davis testified that, although he had no personal knowledge of the videotape, the store manager should have mailed this item to Southland, according to corporate policy. Southland explained that it had received the tape and had ultimately forwarded it to its insurer, where it was lost.

Bass-Davis' theory of the case during trial was that the franchisees were liable for her injuries because their employees had failed to post signs to warn that the floor was wet from mopping. That theory was supported by the testimony of Bass-Davis and Aldora Lewis, a witness who was at the store when Bass-Davis fell. The franchisees' defense was that warning signs were posted when Bass-Davis fell. Although the franchisees were not in the store when Bass-Davis fell, they testified that it was the normal practice for employees to post warning signs when they mopped the floors. Since Bass-Davis' case was based on a failure to warn, the lost videotape was arguably relevant. The videotape showed the front door and a portion of the center aisle, and it was the store's policy to set up a wet floor warning sign near the front door. Thus, even if the videotape would not have shown the location where Bass-Davis fell, it would have shown whether or not a warning sign was placed near the front door.

During the trial, Bass-Davis proffered several jury instructions concerning evidence spoliation, including proposed Instruction C:

> Where relevant evidence which would properly be part of this litigation is within the control of the defendants whose interest it would naturally be to produce it, and they fail to do so without a satisfactory explanation, the jury may draw an inference that such evidence would have been unfavorable to the defendants.

The district court refused to give this instruction, and the jury ultimately returned a verdict for the franchisees.

After the district court entered a judgment on the jury's verdict, Bass-Davis filed a new trial motion, contending, among other things, that the district court had abused its discretion in refusing to give the spoliation instruction and had erred in allowing collat-

eral source evidence at trial. Specifically, during Bass-Davis' cross-examination, the franchisees' counsel had asked her whether she "received a paycheck" during the four-month leave of absence she took from her employment following surgery. Bass-Davis admitted that she had. Bass-Davis' counsel objected because the question called for collateral source evidence, since Bass-Davis was seeking damages for lost wages. The district court overruled the objection. After considering Bass-Davis' new trial motion, the district court denied it.

On appeal, Bass-Davis argues that the district court abused its discretion by (1) failing to instruct the jury on loss of evidence and (2) failing to grant her motion for a new trial based on the introduction of collateral source evidence at trial.

## DISCUSSION

*Loss of evidence jury instruction*

Bass-Davis argues that the jury should have been instructed that potentially relevant lost evidence creates a permissible inference that the evidence was harmful to the party responsible for its production. We agree.

The district court has broad discretion to settle jury instructions, and its decision to give or decline a proposed jury instruction is reviewed for an abuse of that discretion.[4] Notwithstanding this significant latitude, it is well established that " 'a party is entitled to have the jury instructed on all of h[er] case theories that are supported by the evidence.' "[5] Additionally, other courts have held that a trial court's decision on whether to impose sanctions—including an adverse inference instruction—for the destruction or spoliation of evidence, is committed to the trial court's discretion.[6] Thus, if the district court, in rendering its discretionary ruling on whether

---

[4]*Atkinson v. MGM Grand Hotel, Inc.*, 120 Nev. 639, 642, 98 P.3d 678, 680 (2004).

[5]*Id.* (quoting *Silver State Disposal v. Shelley*, 105 Nev. 309, 311, 774 P.2d 1044, 1045 (1989)); *Johnson v. Egtedar*, 112 Nev. 428, 432, 915 P.2d 271, 273 (1996).

[6]*See Aloi v. Union Pacific Railroad Corp.*, 129 P.3d 999, 1002 (Colo. 2006) ("A trial court has broad discretion to permit the jury to draw an adverse inference from the loss or destruction of evidence."); *Oxford Presbyterian Church v. Weil-McLain*, 815 A.2d 1094, 1105 (Pa. Super. Ct. 2003) (finding no abuse of discretion in the trial court's decision to give an adverse inference instruction); *Garfoot v. Fireman's Fund Ins. Co.*, 599 N.W.2d 411, 416 (Wis. Ct. App. 1999). *But see State v. Hartsfield*, 681 N.W.2d 626, 630-31 (Iowa 2004) (rejecting earlier precedent under which a trial court's refusal to give a spoliation instruction was reviewed for an abuse of discretion, in favor of a "correction of errors of law" standard).

to give an adverse inference instruction, "has examined the relevant facts, applied a proper standard of law, and, utilizing a demonstratively rational process, reached a conclusion that a reasonable judge could reach," affirmance is appropriate.[7]

When evidence is willfully suppressed, NRS 47.250(3) creates a rebuttable presumption that the evidence would be adverse if produced. Other courts have determined that willful or intentional spoliation of evidence requires the intent to harm another party through the destruction and not simply the intent to destroy evidence.[8] We agree. Thus, before a rebuttable presumption that willfully suppressed evidence was adverse to the destroying party applies, the party seeking the presumption's benefit has the burden of demonstrating that the evidence was destroyed with intent to harm.[9] When such evidence is produced, the presumption that the evidence was adverse applies, and the burden of proof shifts to the party who destroyed the evidence. To rebut the presumption, the destroying party must then prove, by a preponderance of the evidence, that the destroyed evidence was not unfavorable.[10] If not rebutted, the fact-finder then presumes that the evidence was adverse to the destroying party.

Unlike a rebuttable presumption, an inference has been defined as "[a] logical and reasonable conclusion of a fact not presented by direct evidence but which, by process of logic and reason, a trier of fact may conclude exists from the established facts."[11] Although

---

[7]*Garfoot*, 599 N.W.2d at 416.

[8]*See, e.g., Willard v. Caterpillar, Inc.*, 48 Cal. Rptr. 2d 607, 622 (Ct. App. 1995), *overruled on other grounds by Cedars-Sinai Medical Center v. Superior Court*, 954 P.2d 511, 521 (Cal. 1998); *Smith v. Howard Johnson Co., Inc.*, 615 N.E.2d 1037, 1038 (Ohio 1993) (recognizing a tort claim for interference with or destruction of evidence, and stating that willful destruction of evidence, designed to disrupt the opponent's case, is a necessary element to establish the tort).

[9]*See, e.g., Scout v. City of Gordon*, 849 F. Supp. 687, 691 (D. Neb. 1994); *Moore v. General Motors Corp.*, 558 S.W.2d 720, 736 (Mo. Ct. App. 1977).

[10]*See Sweet v. Sisters of Providence in Washington*, 895 P.2d 484, 491-92 (Alaska 1995); *Ward v. Consolidated Rail Corp.*, 693 N.W.2d 366, 371 (Mich. 2005).

[11]*Black's Law Dictionary* 778 (6th ed. 1990). Although many courts do not distinguish between a presumption and an inference, *see, e.g., Willard v. Buck*, 85 Nev. 34, 35, 449 P.2d 471, 472 (1969); *Waters v. Genesis Health Ventures, Inc.*, 400 F. Supp. 2d 814, 819 (E.D. Pa. 2005); *Abraham v. Great Western Energy, LLC*, 101 P.3d 446, 455 (Wyo. 2004), significant differences exist. A rebuttable presumption is a rule of law by which the finding of a basic fact gives rise to a presumed fact's existence, unless the presumption is rebutted. *Van Wart v. Cook*, 557 P.2d 1161, 1163 (Okla. Civ. App. 1976).

an inference may give rise to a rebuttable presumption in appropriate cases, an inference simply allows the trier of fact to determine, based on other evidence, that a fact exists. An inference is permissible, not required, and it does not shift the burden of proof.

As the rebuttable presumption in NRS 47.250(3) applies only when evidence is willfully suppressed, it should not be applied when evidence is negligently lost or destroyed, without the intent to harm another party. Instead, an inference should be permitted.[12] As recognized by the Maryland Court of Special Appeals, "[a]n intentional or willful destruction of the evidence could support a presumption unfavorable to the [destroyer]; however, the mere inability to produce the [evidence] would support an adverse inference rather than a presumption."[13]

The logic behind the adverse inference for evidence lost or destroyed through negligence was appositely explained in *Turner v. Hudson Transit Lines, Inc.*:

> [The] sanction [of an adverse inference] should be available even for the negligent destruction of documents if that is necessary to further the remedial purpose of the inference. It makes little difference to the party victimized by the destruction of evidence whether that act was done willfully or negligently. The adverse inference provides the necessary mechanism for restoring the evidentiary balance. The inference is *adverse* to the destroyer not because of any finding of moral culpability, but because the risk that the evidence would have been detrimental rather than favorable should fall on the party responsible for its loss.[14]

Generally, in cases based on negligently lost or destroyed evidence, an adverse inference instruction is tied to a showing that the

---

[12]*See, e.g., Banks v. Sunrise Hospital*, 120 Nev. 822, 831, 102 P.3d 52, 59 (2004) (ruling that the district court did not abuse discretion by giving an instruction permitting the jury to draw an adverse inference that evidence not preserved was adverse, when no evidence was introduced that the evidence had been willfully suppressed).

[13]*Social Services v. Russell*, 861 A.2d 92, 106-07 (Md. Ct. Spec. App. 2004).

[14]142 F.R.D. 68, 75 (S.D.N.Y. 1991); *see also Residential Funding Corp. v. DeGeorge Financial*, 306 F.3d 99, 108 (2d Cir. 2002) (confirming that, although a party seeking an adverse inference instruction on the basis that evidence was not produced must show that the nonproducing party had a "culpable state of mind," that factor is satisfied by a showing that the evidence was destroyed "knowingly, even if without intent to breach a duty to preserve it, or negligently"); *Nation-Wide Check v. Forest Hills Distributors*, 692 F.2d 214, 219 (1st Cir. 1982) (concluding that bad faith is not necessary to establish an adverse inference).

party controlling the evidence had notice that it was relevant at the time when the evidence was lost or destroyed.[15] In other words, when presented with a spoliation allegation, the threshold question should be whether the alleged spoliator was under any obligation to preserve the missing or destroyed evidence. The duty to preserve springs from a variety of sources, including ethical obligations,[16] statutes,[17] regulations,[18] and common law. Courts, including this court, that adhere to a common-law duty to preserve evidence have held that a party is required to preserve documents, tangible items, and information relevant to litigation that are reasonably calculated to lead to the discovery of admissible evidence.[19] Thus, the prelitigation duty to preserve evidence is imposed once a party is on ''notice'' of a potential legal claim.[20] While few courts have expounded on the concept of notice, those that have conclude that a party is on notice when litigation is reasonably foreseeable.[21]

For example, in *Testa v. Wal-Mart Stores, Inc.*,[22] the First Circuit Court of Appeals upheld a trial court's decision to issue an adverse inference instruction when the defendant could not account for certain records. In that case, in the process of delivering merchandise to the defendant, the plaintiff slipped on a snow-and-ice-coated delivery ramp, fell, and injured himself. The defendant

[15]*See Nation-Wide Check*, 692 F.2d at 218; *Blinzler v. Marriott Intern., Inc.*, 81 F.3d 1148, 1158-59 (1st Cir. 1996).

[16]*See, e.g.*, Council on Ethical & Judicial Affairs, Am. Med. Ass'n, *Code of Medical Ethics* § 7.05 (1994) (imposing upon physicians ''an obligation to retain patient records which may reasonably be of value to a patient'').

[17]*See, e.g., DeLaughter v. Lawrence County Hosp.*, 601 So. 2d 818, 821-22 (Miss. 1992) (concluding that a duty to preserve evidence arose from a statute requiring hospitals to maintain certain medical records).

[18]*See, e.g., Hicks v. Gates Rubber Co.*, 833 F.2d 1406, 1418-19 (10th Cir. 1987) (concluding that federal regulation created a duty to preserve evidence).

[19]*See, e.g., Fire Ins. Exchange v. Zenith Radio Corp.*, 103 Nev. 648, 651, 747 P.2d 911, 914 (1987) (noting, in the context of NRCP 37 discovery sanctions, that ''even where an action has not been commenced and there is only a potential for litigation, the litigant is under a duty to preserve evidence which it knows or reasonably should know is relevant to the action''); *Wm. T. Thompson Co. v. General Nutrition Corp.*, 593 F. Supp. 1443, 1455 (C.D. Cal. 1984); *Unigard Sec. Ins. v. Lakewood Engineering & Mfg.*, 982 F.2d 363, 365, 367-69 (9th Cir. 1992); *Turner*, 142 F.R.D. at 72; *Welsh v. U.S.*, 844 F.2d 1239, 1246 (6th Cir. 1988).

[20]*See Fire Ins. Exchange*, 103 Nev. at 651, 747 P.2d at 914; *Nevada Power v. Flour Illinois*, 108 Nev. 638, 644 n.7, 837 P.2d 1354, 1359 n.7 (1992); *Blinzler*, 81 F.3d at 1158-59; *McGuire v. Acufex Microsurgical, Inc.*, 175 F.R.D. 149, 153 (D. Mass. 1997); *Burns v. Cannondale Bicycle Co.*, 876 P.2d 415, 419 (Utah Ct. App. 1994) (concluding that there was no duty when a lawsuit had not been filed and there was no notice of an impending action).

[21]*See Blinzler*, 81 F.3d at 1159; *Rice v. U.S.*, 917 F. Supp. 17, 20 (D.D.C. 1996); *Shaffer v. RWP Group, Inc.*, 169 F.R.D. 19, 24 (E.D.N.Y. 1996).

[22]144 F.3d 173 (1st Cir. 1998).

.

made a detailed report of the accident and took photographs, which were later destroyed. At the time when the accident occurred, the plaintiff had threatened to sue.[23] The trial court instructed the jury that it could (but need not) draw a negative inference from the missing evidence.[24] On appeal, the First Circuit reasoned that, although evidence of good faith compliance with an established corporate document retention policy was relevant to the jury's inquiry, the introduction of such evidence was insufficient to defeat the permissive inference instruction.[25] Instead, because the jury could reasonably conclude, based on the evidence presented, that the defendant had notice of the plaintiff's claim and the missing records' relevance to that claim, the adverse inference could be drawn.[26] We agree with the reasoning set forth in *Turner* and *Testa*.

Our prior case law, however, has not differentiated between a rebuttable presumption for willful destruction and a permissible inference for negligently lost or destroyed evidence. In *Reingold v. Wet 'n Wild Nevada, Inc.*,[27] we approved of an adverse inference instruction while concluding that the evidence at issue was willfully destroyed. In that case, the plaintiff was injured while exiting a Wet 'n Wild pool, and, although the plaintiff requested Wet 'n Wild's records relating to prior accidents, Wet 'n Wild failed to produce them because it routinely destroyed records at the end of each season.[28] At trial, the plaintiff requested a jury instruction on which Bass-Davis based her proposed Instruction C in the instant case:

> Where relevant evidence which would properly be part of the case is within the control of the party whose interest it would naturally be to produce it, and he fails to do so, without satisfactory explanation, the jury may draw an inference that such evidence would have been unfavorable to him.[29]

The district court refused to give the instruction, finding no evidence of Wet 'n Wild's willful suppression of evidence, as required for an adverse presumption to apply under NRS 47.250(3), and the plaintiff appealed.

---

[23]*Id.* at 174.

[24]*Id.* at 176-77.

[25]*Id.* at 177.

[26]*Id.* at 178; *see also Turner*, 142 F.R.D. at 76 (concluding that records destroyed pursuant to a document retention policy evidenced negligence rather than bad faith intent, but, because destruction occurred after litigation had commenced, sanctions were warranted).

[27]113 Nev. 967, 944 P.2d 800 (1997).

[28]*Id.* at 970, 944 P.2d at 802.

[29]*Id.*

This court, using two different rationales, determined that the district court committed reversible error by refusing the instruction. First, this court concluded that, under NRS 47.250(3), Wet 'n Wild had willfully suppressed the documents because it intentionally destroyed its records each season: "[d]eliberate destruction of records before the statute of limitations has run on the incidents described in those records amounts to suppression of evidence."[30] Second, this court noted that at common law, when relevant evidence is destroyed, the jury is permitted to draw an adverse inference from the destruction.[31]

Unfortunately, *Reingold* failed to differentiate between negligently lost or destroyed evidence and willfully suppressed evidence. As stated above, willful suppression or destruction, which triggers the rebuttable presumption under NRS 47.250(3), requires more than simple destruction of evidence and instead requires that evidence be destroyed with the intent to harm another party.

Consequently, *Reingold* did not involve a willful suppression of evidence, and we overrule the portion of *Reingold* that equates willful suppression with destruction of records that, while deliberate, is not done with the intent to harm another party.[32] Instead, the evidence in *Reingold* was destroyed in accordance with a routine records destruction policy, and no intent to harm the opposing party was shown. Since, however, the plaintiff suffered a broken hip and left the park in an ambulance, the prospect of litigation was reasonably foreseeable. Wet 'n Wild destroyed potentially relevant records without any particularized inquiry. Therefore, the records destruction in *Reingold* was negligent. Although *Reingold* involved negligent, and not willful destruction of evidence, it correctly determined that the district court should have given an adverse inference instruction.

The instant case similarly involves evidence lost through negligence, and thus, the district court should have given the adverse inference instruction, proffered as proposed Instruction C, or should have imposed another appropriate sanction. Given that Bass-Davis' sister had requested the videotape shortly after Bass-Davis' fall, the franchisees had sufficient notice of Bass-Davis' potential claims. Thus, they were negligent in failing to preserve the evidence. Though the franchisees did not lose the evidence themselves, they provided the evidence to Southland, which forwarded it to its insurer, where it was lost. Since the franchisees were required to

---

[30]*Id.*

[31]*Id.*

[32]Similarly, we disavow any language in *Bohlmann v. Printz*, 120 Nev. 543, 548, 96 P.3d 1155, 1158 (2004), that suggests that a rebuttable presumption is proper simply because relevant evidence is destroyed.

transmit this evidence under corporate policy, both Southland and its insurer were the franchisees' agents with respect to the lost evidence.[33] The law of agency typically will allow the court to impute sanctions to a party for its agent's actions.[34] Here, therefore, the negligence associated with losing the evidence is properly imputed to the franchisees.

## Collateral source rule

Bass-Davis also argues that she was entitled to a new trial because the district court admitted collateral source evidence. Although we have determined that reversal is mandated based on the district court's failure to instruct the jury, we consider this issue as well.

NRCP 59(a)(7) authorizes a party to move the district court for a new trial if an error in law occurred during the trial and the moving party objected to that error. ''The decision to grant or deny a motion for a new trial rests within the sound discretion of the trial court, and this court will not disturb that decision absent palpable abuse.''[35]

The collateral source rule prohibits the jury from reducing the plaintiff's damages on the ground that he received compensation

---

[33]*See Esso International, Inc. v. SS Captain John*, 443 F.2d 1144 (5th Cir. 1971) (noting that an agent has such authority as the principal, either actually or ostensibly, confers upon the agent); *Miller & Rhoads v. West*, 442 F. Supp. 341 (E.D. Va. 1977) (recognizing that a corporation may act as an agent); *see also Romero v. Mervyn's*, 784 P.2d 992 (N.M. 1989) (explaining that even if actual authority is not present, apparent authority exists, and the principal is bound by all the acts of the agent under the apparent scope of that authority, when the principal has held the agent out as acting for the principal in a particular matter).

[34]*See, e.g., Vodusek v. Bayliner Marine Corp.*, 71 F.3d 148, 157 (4th Cir. 1995) (determining that spoliation remedies are available if a party or her agent, such as an expert witness, destroyed relevant evidence); *Thompson ex. rel. Thompson v. Owensby*, 704 N.E.2d 134, 137 (Ind. Ct. App. 1998) (concluding that an insurer's knowledge of a party's claim and the insurer's possession of key evidence created a relationship between the insurer and the party that weighed in favor of the insurer's duty to preserve the evidence); *Koplin v. Rosel Well Perforators, Inc.*, 734 P.2d 1177, 1179 (Kan. 1987) (noting that the general rule ''that there is no duty to preserve possible evidence for another party'' does not apply when the nonparty is bound by a special relationship with a party to the litigation, whether by agreement, contract, statute, or some other special circumstance); *Garfoot*, 599 N.W.2d at 420-21 (explaining in the context of evidence destroyed by an attorney's hired expert that when a party's agent's agent destroys evidence, the party may be sanctioned for spoliation).

[35]*Edwards Indus. v. DTE/BTE, Inc.*, 112 Nev. 1025, 1036, 923 P.2d 569, 576 (1996).

for his injuries from a source other than the tortfeasor.[36] In *Proctor v. Castelletti*, we adopted a per se rule prohibiting "the admission of a collateral source of payment for an injury into evidence for any purpose."[37] Collateral source evidence is prohibited because it "inevitably prejudices the jury . . . [and] greatly increases the likelihood that a jury will reduce a plaintiff's award of damages because it knows the plaintiff is already receiving compensation."[38] In *Proctor*, we held that the appellant was entitled to a new trial because the district court's admission of collateral source evidence affected her "right to a fair trial and . . . to be fairly compensated for her injuries."[39]

During cross-examination, the franchisees' counsel asked Bass-Davis whether she "received a paycheck" during the four-month leave of absence she took from her employment following surgery. Bass-Davis admitted that she had. Bass-Davis' collateral source rule objection was then overruled. We conclude that this scenario fits squarely within the collateral source rule.

The district court erred in admitting evidence that Bass-Davis received compensation from her employer during her leave of absence. The district court's admission of this evidence damaged Bass-Davis' credibility in the eyes of the jury because it suggested that Bass-Davis brought a lost wages claim for which she had already been compensated. The admission also inherently prejudiced Bass-Davis' right to be fairly compensated for injuries caused by the defendant.[40] The admission of collateral source evidence can only be cured by a new trial.

### Bass-Davis' remaining claims

Bass-Davis raises several additional assignments of error regarding the district court's denial of her pre- and post-trial motions. Since we have already determined that Bass-Davis is entitled to a new trial, we need not consider these additional assignments of error.

### CONCLUSION

Considering the potential consequences to the nonspoliating party, we conclude that an NRS 47.250(3) rebuttable *presumption* only applies in cases involving *willfully* destroyed evidence. However, the jury, when properly instructed, is permitted to draw an

---

[36]*Proctor v. Castelletti*, 112 Nev. 88, 90 n.1, 911 P.2d 853, 854 n.1 (1996).

[37]*Id.* at 90, 911 P.2d at 854.

[38]*Id.*

[39]*Id.* at 91, 911 P.2d at 854.

[40]*Id.* at 90, 911 P.2d at 854.

adverse *inference* when evidence is lost or destroyed through *negligence*. Accordingly, we conclude that the district court abused its discretion by refusing to either give an adverse inference instruction, permitting the jury to infer that the lost evidence would have been unfavorable to the franchisees or to impose other appropriate sanctions for the lost evidence. The district court also improperly admitted evidence of a collateral source of payment. Accordingly, we reverse the judgment and order below and remand for a new trial consistent with this opinion.

ROSE, C. J., BECKER, DOUGLAS and PARRAGUIRRE, JJ., concur.

MAUPIN, J., with whom HARDESTY, J., agrees, concurring:

I agree with the result reached by the majority. We have now properly retreated from the misapplication of spoliation presumptions in *Reingold v. Wet 'n Wild Nevada, Inc.*,[1] and clarified the interplay between presumptions attendant to intentional destruction of evidence and inferences to be drawn in the case of non-intentional destruction.

I write separately to note that the matter at hand does not present a clear case in controversy raising our questionable embrace in *Banks v. Sunrise Hospital*,[2] of an absolute duty of a potential defendant in a civil case to preserve evidence. This matter likewise does not present the further questionable implication in *Banks* that the inference of unfavorability may provide a substitute for substantive evidence.[3] Thus, revisitation of these primary errors in *Banks* will have to await another case.

---

[1] 113 Nev. 967, 944 P.2d 800 (1997).

[2] 120 Nev. 822, 102 P.3d 52 (2004).

[3] *See Kammerer v. Sewerage & Water Bd.*, 633 So. 2d 1357, 1361 (La. Ct. App. 1994) ("The traditional rule at common law will not substitute the adverse inference for plaintiff's proof of an essential element of his or her case.").