137 Nev., Advance Opinion 31

# IN THE SUPREME COURT OF THE STATE OF NEVADA

DIRECT GRADING & PAVING, LLC, A NEVADA LIMITED LIABILITY COMPANY,
Petitioner,
vs.
THE EIGHTH JUDICIAL DISTRICT COURT OF THE STATE OF NEVADA, IN AND FOR THE COUNTY OF CLARK; AND THE HONORABLE ROB BARE, DISTRICT JUDGE,
Respondents,
  and
CENTURY COMMUNITIES OF NEVADA, LLC, A NEVADA LIMITED LIABILITY COMPANY, AND ARGONAUT INSURANCE COMPANY,
Real Parties in Interest.

No. 81933

FILED

JUL 08 2021

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY
CHIEF DEPUTY CLERK

Original petition for a writ of mandamus challenging a district court order granting a motion for district court intervention during binding arbitration.

*Petition granted.*

Johnson & Gubler, P.C., and Matthew L. Johnson and Russell Gene Gubler, Las Vegas,
for Petitioner.

Santoro Whitmire and Nicholas J. Santoro and Oliver J. Pancheri, Las Vegas,
for Real Parties in Interest.

21-19541

BEFORE THE SUPREME COURT, PARRAGUIRRE, STIGLICH, and SILVER, JJ.


*OPINION*

By the Court, SILVER, J.:

In this opinion, we address whether the district court has authority, either under NRS 38.222's provisional remedy allowance or through its inherent powers, to intervene in binding arbitration to sanction a party's misconduct. We clarify that NRS 38.222 provides limited authority to intervene in an arbitration only where the district court orders a provisional remedy. Because the parties here did not seek, and the district court did not provide, a provisional remedy, NRS 38.222 did not grant the district court authority to intervene in the arbitration. We further conclude that the district court did not have inherent authority to intervene in this arbitration to remedy alleged litigation misconduct because that matter was squarely before the arbitrator. Accordingly, we grant writ relief and instruct the district court to return the case to arbitration.

*FACTS AND PROCEDURAL HISTORY*

Petitioner Direct Grading & Paving, LLC (Direct) and real party in interest Century Communities of Nevada, LLC (Century) entered into a Master Subcontract Agreement (MSA) and subsequent Project Work Authorizations for four construction projects to be performed on several of Century's properties. The MSA included an arbitration clause stating that "any disputed claim" between the parties "shall [be] settled by arbitration" unless both parties agreed not to arbitrate. Direct allegedly failed to timely perform the scope of the work, and Century fired Direct as a result. Direct then recorded the following four mechanic's liens in 2017: (1) $290,018.55

SUPREME COURT
OF
NEVADA

(O) 1947A

against the Inspirada property, (2) $301,043.48 against the Lake Las Vegas property, (3) $735,863.15 against the Freeway 50 property, and (4) $344,988.46 against the Rhodes Ranch property.

The parties agreed to Direct filing a complaint in district court, staying the action, selecting an arbitrator, and allowing the case to proceed through arbitration. During discovery in arbitration, Century hired an expert accountant who uncovered alleged discrepancies in Direct's documents suggesting that a Direct employee altered documents between the Bureau of Land Management and Direct to overstate the amount of dirt delivered to the Inspirada property. The alteration allegedly covered up Direct overcharging Century approximately $550,000 for the dirt. Century also learned that its former land development manager, Scott Prokopchuk, was employed by DGP Holdings, a company owned by Direct, in a possible conflict of interest, as Prokopchuk had the authority to approve invoices from Direct on Century's behalf.

Direct claimed it was unaware of the alterations and asserted the employee only altered the documents because she thought she was missing another document. Direct further asserted any errors in the Bureau of Land Management/Direct documents had "no legal bearing on Century," as Century ultimately received the materials needed for the project and was not actually overcharged. As to Prokopchuk, Direct claimed he worked for DGP Holdings, a legal entity separate and distinct from Direct, and that there was no conflict of interest because Century's upper management had to approve any Project Work Authorizations Prokopchuk processed.

The arbitrator ordered that an independent third-party information technology specialist perform a sweep of Direct's computers, cell phones, and server and that other discovery be stayed. The specialist who performed the sweep opined that Direct intentionally used a Windows upgrade to complicate the sweep and also purposely concealed computer data by withholding the computer or hard drive used by the employee who allegedly altered the records.

After the sweep of Direct's technology, Century submitted its first motion for discovery sanctions, asking the arbitrator to strike Direct's claims and enter adverse findings against Direct, to remove Direct's mechanic's liens and dismiss any claims Direct had against Century's surety bonds, and to award Century its fees and costs. The arbitrator issued an order fining Direct $130,000. But the arbitrator declined to strike Direct's claims at that time, noting that while the evidence showed the employee altered the documents and that Direct as the employer was ultimately responsible, the arbitrator did not feel the altered documents required him to question all of Direct's documentation supporting its claims or necessarily strike any of Direct's claims. The arbitrator noted concern with evidence suggesting Direct had failed to preserve evidence, but he could not determine whether Direct engaged in spoliation of evidence and declined to rule on that issue at that time. Instead, the arbitrator reserved the right to supplement the order or make a further ruling at the close of discovery.

Century moved for clarification and reconsideration of the arbitrator's order, asking him to make an express ruling on Century's motion to expunge Direct's liens and release the bonds. Century specifically asserted that Prokopchuk's relationship with Direct was a clear breach of

Supreme Court
of
Nevada

(O) 1947A

4

the parties' agreement and prevented Direct from receiving payment for any of its projects. Century further requested the arbitrator hold an evidentiary hearing to obtain any additional necessary evidence, issue a final ruling on discovery sanctions, and issue an interim award "so that Century can seek relief with the District Court." While that motion was still pending, Century submitted another motion for additional sanctions, explaining that Direct had not paid Century for the previous $130,000 sanction.

The arbitrator's subsequent order explained that the prior ruling was clear and unambiguous and that expunging any lien at that time would be inappropriate. The arbitrator ordered that the $130,000 in sanctions would be deducted from one of Direct's mechanic's liens if Direct did not pay that sanction within 30 days. The arbitrator denied the demand for an evidentiary hearing and ordered the parties to prepare a joint recommendation for proposed additional discovery.

Century then filed a motion in the district court for provisional relief pursuant to NRS 38.222, requesting that the district court take action to remedy the misconduct. After conducting a hearing, the district court found that it had authority to address the issues raised in the motion because (1) the district court had jurisdiction over the lawsuit Direct filed in court; (2) the court had inherent authority and permission under NRCP 37 to address alleged discovery misconduct and alteration of documents; (3) NRS 38.222 allows the court to provide provisional relief; and (4) judicial economy would be served by resolving the issues because the arbitrator was "not doing what a trial judge would do," was "not providing an adequate remedy," and had erred by refusing to conduct an evidentiary hearing. The district court ordered Century and Direct to file points and authorities in support of their respective positions on whether Century should be granted

relief for Direct's alleged misconduct and fraud upon the court. The district court stayed arbitration pending an evidentiary hearing and the court's ruling on Century's motion.

In early March 2020, shortly before the Covid-19 pandemic took hold, Direct filed a motion for reconsideration. The motion was denied after pandemic precautions prevented a hearing. In late September, after Direct filed additional briefing, the district court denied the motion for reconsideration. Direct then filed the instant petition.

*DISCUSSION*

The primary issue raised by this petition is whether the district court had authority to intervene in a binding arbitration to remedy alleged misconduct. We first determine whether our consideration of this petition for writ relief is warranted, before turning to whether the district court had authority to hear the misconduct dispute.

*We exercise our discretion to entertain the writ petition*

"A writ of mandamus is available to compel the performance of an act which the law . . . [requires] as a duty resulting from an office, trust or station, or to control a manifest abuse or an arbitrary or capricious exercise of discretion." *Cote H. v. Eighth Judicial Dist. Court*, 124 Nev. 36, 39, 175 P.3d 906, 907-08 (2008) (internal quotation marks and footnote omitted) (alterations in original). Mandamus is an extraordinary remedy, available only when there is no "plain, speedy and adequate remedy in the ordinary course of law." NRS 34.170; *see Cote H.*, 124 Nev. at 39, 175 P.3d at 908.

The decision to entertain a petition for a writ of mandamus is within our sole discretion. *Smith v. Eighth Judicial Dist. Court*, 107 Nev. 674, 677, 818 P.2d 849, 851 (1991). "Because an appeal is ordinarily an adequate remedy, this court generally declines to consider writ petitions

challenging interlocutory district court orders." *Helfstein v. Eighth Judicial Dist. Court*, 131 Nev. 909, 912, 362 P.3d 91, 94 (2015). "But we may consider writ petitions when an important issue of law needs clarification and considerations of sound judicial economy are served." *Id.*

We elect to consider Direct's writ petition because it raises important issues of first impression, including whether NRS 38.222 authorizes the district court to intervene in binding arbitration to remedy alleged misconduct. Clarifying the available procedures here will serve judicial economy by ensuring that the matter, which has not progressed beyond the discovery stage at this point, proceeds in the correct forum.[1]

*The district court erred by hearing a discovery dispute from parties involved in arbitration*

Direct argues the district court did not have authority under NRS 38.222 or through its inherent powers to remove Century and Direct's discovery dispute from arbitration. We agree.

---

[1]Century argues that the doctrine of laches bars Direct's petition. We decline to apply the doctrine of laches here, as our review of the record shows that Direct filed its petition at most five months after the district court denied its motion for reconsideration, and moreover, we conclude the delay does not warrant application of the laches doctrine under the facts of this case. *See, e.g., State v. Eighth Judicial Dist. Court*, 118 Nev. 140, 148, 42 P.3d 233, 238 (2002) (acknowledging that writ relief is subject to the doctrine of laches and setting forth questions a court must consider in determining whether laches applies, including whether the delay was inexcusable); *Widdis v. Second Judicial Dist. Court*, 114 Nev. 1224, 1227-28, 968 P.2d 1165, 1167 (1998) (noting Nevada law does not set a specific time limit by which a petition for mandamus must be filed and finding that a petition was not barred by the doctrine of laches due to a seven-month delay in filing).

*NRS 38.222*

Under NRS 38.222(2)(b), after an arbitrator has been appointed and is able to act, a party to the arbitration "may move the court for a provisional remedy only if the matter is urgent and the arbitrator is not able to act timely or the arbitrator cannot provide an adequate remedy." A provisional remedy is "[a] temporary remedy awarded before judgment and pending the action's disposition, such as a temporary restraining order, a preliminary injunction, a prejudgment receivership, or an attachment," that "is intended to maintain the status quo by protecting a person's safety or preserving property." *Remedy, provisional remedy, Black's Law Dictionary* (11th ed. 2019). Thus, the plain language of NRS 38.222 allows a district court to provide a temporary remedy to preserve the status quo if the arbitrator is not able to do so. It does not allow the district court to withdraw a case from arbitration or award potentially case-ending sanctions that the arbitrator previously declined to award. *Cf. Sea Vault Partners, LLC v. Bermello, Ajamil & Partners, Inc.*, 274 So. 3d 473, 478 (Fla. Dist. Ct. App. 2019) (addressing a statute identical to NRS 38.222(2)(b) and concluding "a plain reading of the statute . . . does not confer jurisdiction on the trial court to award sanctions simply because the [a]rbitrator declined to do so").

Here, nothing about Century's motion suggests NRS 38.222 applies to allow the district court's intervention. There is no indication that the arbitrator lacked enough time or was unable, as opposed to unwilling, to remedy any demonstrated misconduct. Century did not show why this matter was urgent, and Century's desire to expunge the liens does not require the district court's interference, as the arbitrator had the authority to expunge the liens, declined to do so at the time, and remains able to act timely and provide Century's requested remedy if the evidence supports it.



Moreover, Century did not request any type of provisional remedy to preserve the status quo. The district court stated in its order that it stayed arbitration pending an evidentiary hearing and the court's ruling on Century's motion. However, if the district court were to then grant Century's motion and expunge the liens, the district court effectively will have resolved the entire case in Century's favor rather than preserve the status quo. Accordingly, the district court did not have authority under NRS 38.222 to intervene in this arbitration.[2] We next consider whether the district court had authority through its inherent powers to intervene in this arbitration.

*Inherent powers*

Generally, we recognize the district courts' inherent powers to sanction parties for litigation abuse occurring during district court proceedings. "[C]ourts have 'inherent equitable powers to dismiss actions or enter default judgments for . . . abusive litigation practices.'" *Young v. Johnny Ribeiro Bldg., Inc.*, 106 Nev. 88, 92, 787 P.2d 777, 779 (1990) (alteration in original) (quoting *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d

_____

[2]Century also argues the arbitrator improperly failed to rule on whether Direct established the validity of the mechanic's liens pursuant to NRS 108.2275 and, therefore, the district court can resolve the dispute. However, we are not convinced the arbitrator was bound by NRS 108.2275, which by its plain language concerns only the *district court's* actions following a hearing on frivolous or excessive liens. And while the arbitration agreement authorized the arbitrator to grant relief provided by NRS 108.2275, the agreement did not require the arbitrator to comply with NRS 108.2275's procedural requirements. Moreover, even if the arbitrator was required to comply with the statute and failed to do so, that issue is best suited for the district court's determination of whether to confirm the arbitrator's final award. Therefore, we decline to consider this argument further.

915, 916 (9th Cir. 1987)). Additionally, NRCP 37(b)(1) provides that a district court may issue discovery sanctions if a party "fails to obey an order to provide or permit discovery." However, both sources of power address a district court's ability to sanction parties for litigation abuses occurring in proceedings before that court. We have never held that district courts have inherent or rule-based power to sanction perceived abuses occurring in an ongoing arbitration. Moreover, we have a strong preference in favor of arbitration and upholding arbitration clauses that weighs against extending the courts' inherent powers to arbitration cases in this manner. *Cf. Int'l Ass'n of Firefighters, Loc. No. 1285 v. City of Las Vegas*, 112 Nev. 1319, 1323-24, 929 P.2d 954, 957 (1996) (explaining Nevada courts will uphold and enforce arbitration clauses unless it is clear that the arbitration clause does not cover the dispute).

Here, the district court found that because Direct filed a complaint in the district court, the court had inherent authority over the case and, by extension, discretion to address the misconduct raised during arbitration. However, while the district court had authority over the case before it, it did not similarly have inherent authority over the arbitration case. The district court's reasoning is flawed here because it relied on *Bahena v. Goodyear Tire & Rubber Co.*, 126 Nev. 606, 615, 245 P.3d 1182, 1188 (2010), *Bass-Davis v. Davis*, 122 Nev. 442, 452, 134 P.3d 103, 109 (2006), and *Young v. Johnny Ribeiro Building, Inc.*, 106 Nev. 88, 91, 787 P.2d 777, 779 (1990), and all of those cases concern the court's authority over its own pending case and say nothing about cases that have been stayed and removed to arbitration. Moreover, this court has routinely enforced arbitration agreements, and here, the parties expressly agreed to arbitrate and agreed on the presiding arbitrator. Further, Direct filed its

complaint to preserve the statute of limitations while they arbitrated, and Century provides no adequate support for its assumptions that filing a complaint under these facts, or attempting to enforce a fraudulent lien during arbitration, would operate to remove the case from binding arbitration after the parties had contractually agreed to arbitrate.[3] Accordingly, the district court did not have inherent authority to remove Century and Direct's dispute from binding arbitration,[4] and writ relief is warranted.[5]

## CONCLUSION

We conclude the district court did not have the authority under NRS 38.222 to intervene in this arbitration because Century did not seek, and the district court did not provide, a provisional remedy. We further conclude the district court did not have inherent authority to intervene in the arbitration because neither Nevada law, nor Direct's lawsuit filed in the

---

[3]As to the litigation abuse more specifically, discovery is ongoing and the alleged fraud regards only the Inspirada lien. Yet, troublingly, the district court concluded it had authority to assume jurisdiction over *all* liens.

[4]Direct also argues the doctrines of res judicata and judicial estoppel preclude Century's arguments and that the district court's decision unfairly prejudiced Direct. In light of our decision, we do not consider these arguments.

[5]Century also argues we should direct the district court to grant Century's request to appoint a new arbitrator pursuant to NRS 38.226. NRS 38.226(1) allows for the court to appoint a new arbitrator when the current arbitrator "fails or is unable to act." Here, the district court did not take any issue with the timeliness of the arbitrator's actions, and the record does not show that the arbitrator failed or was unable to act. Therefore, we decline to issue the order Century requests.

district court, gave the court that authority under the facts of this case. Accordingly, we grant Direct's petition and direct the clerk of this court to issue a writ of mandamus instructing the district court to vacate its order granting Century's motion for provisional relief and to return the case to arbitration.[6]

_____, J.
Silver

We concur:

_____, J.
Parraguirre

_____, J.
Stiglich

_____

[6]We also lift the stay entered in this matter on November 13, 2020.