OPINION
 

 Per Curiam:
 

 Appellant Marc Cramer was injured when the taxi he was driving collided with a taxi driven by respondent Charles Warren Peavy and owned by respondent Nevada Checker Cab Corporation. The jury returned a verdict in favor of the respondents (hereinafter “Checker Cab”).
 

 On appeal, Cramer contends that: (1) the district court erred in denying his motions for mistrial made when the jury was told he had received compensation from the State Industrial Insurance System (“SIIS”); (2) NRS 616C.215(10) violates the separation of powers doctrine; and (3) the district court abused its discretion
 
 *577
 
 in denying his motion for a new trial on the ground that the jury manifestly disregarded the court’s instructions in reaching a verdict.
 

 We conclude first that the district court did not err in denying Cramer’s motions for a mistrial, second that NRS 616C.215(10) is constitutional, and finally that Cramer failed to preserve the issue of whether the jury manifestly disregarded the court’s instructions. Therefore, we affirm the judgment entered below.
 

 FACTS
 

 In January 1995 Marc Cramer was employed by Desert Cab. On January 19, 1995, a Checker Cab driven by Charles Warren Peavy ran a red light and collided with the taxi driven by Cramer. Checker Cab stipulated at trial that it was liable in causing the accident.
 

 Cramer has been involved in three serious automobile accidents. One was approximately two years prior to and the other approximately one year subsequent to the accident at issue here. Cramer sustained injuries in all three accidents. At trial, the central issue was which, if any, of his permanent injuries were caused by the January 1995 accident.
 

 During trial, Checker Cab primarily sought to undermine Cramer’s credibility. While Cramer sought approximately $350,000.00 in damages for various injuries and pain and suffering, the defendants argued that the only injuries attributable to this accident were nothing more than cuts and bruises. The jury returned a verdict for Checker Cab.
 

 Cramer eventually consulted with eight doctors after the accident. Five of the doctors testified at trial, and the reports of the other three were entered into evidence. The medical evidence was frequently contradictory.
 

 The most seriously contested of Cramer’s damage claims was an injury Cramer claimed he received to his coccyx.
 
 [1]
 
 Both Dr. Frederick C. Redfern, who was Cramer’s treating physician, and a different doctor, who examined Cramer later, found that Cramer had injured his coccyx in the accident. Another doctor testified that Cramer could not have injured his coccyx in the accident. A fourth doctor testified that, theoretically, under exact conditions, Cramer could have injured his coccyx in the accident, but that if he had, he would have been in pain at the time he was examined, which he was not. Finally, yet another doctor testified that a fracture to the coccyx would not cause the symptoms that Cramer was experiencing.
 

 
 *578
 
 At trial, Checker Cab made several references to the fact that SIIS had paid some of Cramer’s medical expenses.
 

 In his opening statement, counsel for Checker Cab stated, “Surprise, surprise .... Dr. Redfem, first thing he does is he insists that the SIIS . . . pay for MRIs for Mr. Cramer’s knees. The SIIS is . . . the entity that is responsible to pay for all the medical and disability that Mr. Cramer has gotten so far. That’s what workman’s comp is about.” Checker Cab also stated, “[T]he evidence is going to show, to a certain extent, poor old SIIS held the bag in this case.’ ’
 

 During its cross-examination of Dr. Redfern, Checker Cab asked how much he was reimbursed by SIIS in contrast to what he had charged. The doctor was also questioned at length as to the intricacies of his billing procedures.
 

 The next day Cramer moved for a mistrial on the ground that Checker Cab had violated the collateral source rule by telling the jury thát Cramer did not have to pay his medical bills. The motion was denied. However, the court said that it would give an instruction on it if Cramer wished.
 

 Checker Cab referred to the SIIS benefits again during its closing argument stating, “Mr. Cramer, of course, had all of the medical bills that were generated in this case paid for by SIIS and got a PPD [permanent partial disability] award on top of that.” Checker Cab then reread to the jury part of the SIIS instruction given earlier by the court
 
 [2]
 
 and stated: “That means regardless of how much you award Mr. Cramer in this case, he doesn’t have to repay the SIIS for what he’s already gotten.” At that point Cramer objected to the statement as being an incorrect statement of the law and moved again for a mistrial. Before the motion was denied, the following exchange took place:
 

 COUNSEL FOR CRAMER: Your Honor, I hate to object, but he just made a statement that’s incorrect as to the law.
 

 THE COURT: I think you misstated.
 

 COUNSEL FOR CRAMER: He stated the exact opposite of what’s legally true.
 

 THE COURT: I don’t think he meant to do that. I think you—
 

 COUNSEL FOR CHECKER CAB: If the plaintiff does not obtain a judgment in his favor—
 

 THE COURT: —that’s receiving enough.
 

 
 *579
 
 COUNSEL FOR CRAMER: You said if he receives an award, he doesn’t have to repay.
 

 COUNSEL FOR CHECKER CAB: I apologize, Your Honor. You’re right. I misspoke.
 

 COUNSEL FOR CRAMER: Your Honor, based on that comment, I’d move for a mistrial.
 

 THE COURT: Counsel, we are clearing it up right now. He just misspoke.
 

 COUNSEL FOR CHECKER CAB: I misspoke about the SÜS. What I was trying to get at was the system, the SIIS system, doesn’t depend upon fault.
 

 Before the jury commenced deliberations, the district court attempted to clarify any confusion created by Checker Cab’s misstatement of the law. The court told the jurors that:
 

 On Instruction Number 21, it’s really a quite simple instruction. All you have to remember, ladies and gentlemen, is that you come back with the judgment, the amount of money, if any, that you deem appropriate without any deductions. That’s all you have to remember. You come back with a judgment, if any, that you deem it’s [sic] appropriate; no deductions.
 

 Prior to closing arguments, the jury was given the statutory instruction on workers’ compensation as required by NRS 616C.215(10).
 
 [3]
 
 The jury was also told that Checker Cab had admitted liability for any of Cramer’s injuries that were proximately caused by the accident, and was instructed on proximate cause and damages.
 

 The jury returned a verdict for Checker Cab. Cramer moved for a new trial under NRCP 59 on the grounds that the district court
 
 *580
 
 erred as a matter of law because Checker Cab’s references to SIIS violated the collateral source rule and that the jury disregarded the court’s instructions in reaching the verdict. The motion was denied. Cramer then filed this appeal.
 

 DISCUSSION
 

 References to SIIS
 

 Cramer contends that the district court’s failure to grant a mistrial on the ground that Checker Cab repeatedly informed the jury of SIIS benefits is reversible error. We disagree.
 

 “Denial of a motion for mistrial can only be reversed where there is a clear showing of an abuse of discretion.” Mortensen v. State, 115 Nev. 273 , 281, 986 P.2d 1105, 1111 (1999). NRS 616C.215(10) provides that:
 

 In any trial of an action by the injured employee . . . against a person other than the employer ... the jury must receive proof of the amount of all payments made or to be made by the insurer or the administrator.
 

 Based upon the language of the statute, we conclude that the district court did not abuse its discretion in failing to grant a mistrial on the ground that the jury was informed that Cramer received SIIS benefits.
 

 However, we note that the way in which Checker Cab chose to handle the SIIS issue skirted the edges of propriety. Having reviewed the legislative history of NRS 616C.215(10), we conclude that the legislature did not intend NRS 616C.215(10) to eviscerate the collateral source rule. Rather, the statute creates a narrow exception to the rule. “The intent of the legislature is the controlling factor in statutory interpretation.” Cleghorn v. Hess, 109 Nev. 544, 548, 853 P.2d 1260, 1262 (1993).
 

 The legislative history of NRS 616C.215(10) shows that the legislature expressed concern about the practice of informing the jury that the plaintiff had received workers’ compensation benefits. Minutes of the Meeting on S.B. 211 Before the Senate Judiciary Comm., 59th Leg. at 4 (Nev., February 23, 1977). Senate Bill 211 amended what was then NRS 616.560(5) and is currently NRS 616C.215(10) by adding the jury instructions that are now at issue. In considering the jury instructions, the legislature expressed its view that cases involving SIIS benefits are unique from other insurance cases because the jury already knows that the plaintiff has received SIIS benefits if the injury was work
 
 *581
 
 related.
 
 Id.
 
 at 3 (April 4, 1977). The legislature received evidence that under the system as it then existed, the jury was usually under the mistaken belief that the plaintiff was not required to repay SIIS from any damage award.
 
 Id.
 
 at Exhibit E. In an attempt to reach a just verdict, the jury would speculate as to how much the plaintiff had received from SIIS and reduce the award accordingly.
 
 Id.
 
 Thus, NRS 616C.215(10) was intended to curtail this practice.
 

 Accordingly, NRS 616C.215(10) cannot be used by the defense to imply that the plaintiff has already been compensated, will receive a double recovery if awarded a judgment or has overcharged SIIS. The statute properly informs the jury that the plaintiff has received SIIS benefits and that there is a procedure in place for repaying SIIS from any damage award.
 

 We conclude that the references made by Checker Cab concerning SnS payments were improper. However, the references were neither so egregious nor so numerous as to confuse the jury or affect the verdict reached.
 

 Cramer’s prior and subsequent accidents created a factual question for the jury as to which of his permanent injuries, if any, were caused by the accident of January 1995.
 
 See
 
 Mulder v. State, 116 Nev. 1, 15, 992 P.2d 845, 853-54 (2000) (“The trier of fact determines the weight and credibility to give conflicting testimony.”). This case was primarily about Cramer’s credibility. The jury received ample evidence to support a finding that his permanent injuries were either non-existent or unrelated to this accident. In fact, in Cramer’s closing argument, his attorney invited the jury to return a defense verdict if they did not believe his client.
 
 [4]
 
 The jury was properly instructed on SIIS payments, and its verdict is supported by substantial evidence and not clearly erroneous in light of all the evidence presented. Frances v. Plaza Pacific Equities, 109 Nev. 91, 94, 847 P.2d 722, 724 (1993). Accordingly, the district court did not abuse its discretion in declining to grant a mistrial.
 

 Constitutionality of NRS 616C. 215(10)
 

 Cramer also contends that NRS 616C.215(10) is unconstitu
 
 *582
 
 tional because the legislatively mandated jury instruction infringes on a judicial function and therefore violates the separation of powers doctrine.
 

 In Proctor v. Castelletti, 112 Nev. 88, 911 P.2d 853 (1996), we adopted ‘ ‘a
 
 per se
 
 rule barring the admission of a collateral source of payment for an injury into evidence for any purpose.”
 
 Id.
 
 at 90, 911 P.2d at 854. Cramer argues that NRS 616C.215(10) cannot be reconciled with
 
 Proctor,
 
 and that the statute is therefore unconstitutional.
 

 When a statute is challenged on constitutional grounds, it is “to be construed in favor of the legislative power.” Galloway v. Truesdell, 83 Nev. 13, 20, 422 P.2d 237, 242 (1967). The legislature has the power to enact rules of evidence. Barrett v. Baird, 111 Nev. 1496, 1512, 908 P.2d 689, 700 (1995). Furthermore, “no person has a vested right in a rule of law, nor can anyone assert a vested right in any particular mode of procedure.’ ’ Nevada Industrial Comm’n v. Reese, 93 Nev. 115, 123, 560 P.2d 1352, 1357 (1977). We conclude that the legislature did not exceed its authority in enacting NRS 616C.215(10), and that NRS 616C.215(10) is not superceded by
 
 Proctor,
 
 but rather is an exception to the per se rule against collateral sources we articulated in that case.
 

 Jury verdict
 

 Cramer argues that the jury’s verdict is inconsistent because in its closing arguments the defense conceded that Cramer was entitled to approximately $20,000.00 in damages, yet the jury awarded him nothing. We conclude that Cramer’s argument lacks merit. As noted, Cramer’s attorney repeatedly invited the jury to award Cramer nothing if it believed he was untruthful. We cannot say that the jury acted improperly when it apparently followed the direction of Cramer’s attorney. Moreover, Cramer has failed to preserve the question of whether the jury manifestly disregarded the court’s instructions.
 

 One of this court’s “primary objectivefs) ” is to promote the “efficient administration of justice.” Eberhard Mfg. Co. v. Baldwin, 97 Nev. 271, 273, 628 P.2d 681, 682 (1981). The efficient administration of justice requires that any doubts concerning a verdict’s consistency with Nevada law be addressed before the court dismisses the jury. Carlson v. Locatelli, 109 Nev. 257, 262-63, 849 P.2d 313, 316 (1993). “Where possible, the verdict should be salvaged so that no new trial is required.”
 
 Id.
 
 at 263,
 
 *583
 
 849 P.2d at 316-17. In furtherance of this goal, we have formulated the policy that “failure to timely object to the filing of the verdict or to move that the case be resubmitted to the jury” constitutes a waiver of the issue of an inconsistent verdict.
 
 Eberhard,
 
 97 Nev. at 273, 628 P.2d at 682.
 
 See also
 
 Brascia v. Johnson, 105 Nev. 592, 596 n.2, 781 P.2d 765, 768 n.2 (1989);
 
 Carlson,
 
 109 Nev. at 262-63, 849 P.2d at 316-17. Accordingly, to preserve the issue for appeal, Cramer was required to object to the verdict before the jury was discharged. The trial court would then have had the opportunity to consider whether it was impossible for the jury to return a defense verdict as a matter of law, and if so, the matter could have been returned to the jury with additional instructions. This procedure would have promoted fairness and the efficient administration of justice. Cramer failed to make a timely objection. Therefore, we will not consider his argument now.
 

 CONCLUSION
 

 We conclude that the district court did not abuse its discretion in denying a mistrial. We also conclude that NRS 616C.215(10) is constitutional. Finally, Cramer failed to preserve the issue of whether the jury manifestly disregarded the court’s instructions in reaching a verdict. We therefore affirm the district court’s judgment and the order denying Cramer’s motion for a new trial.
 

 [1]
 

 The coccyx is the last bone of the spinal column. J.E. Schmidt, M.D., 2
 
 Attorneys’ Dictionary of Medicine,
 
 C-335 (1999).
 

 [2]
 

 Checker Cab read to the jury as follows: “If the plaintiff does not obtain a judgment in his favor in this case, he is not required to repay his employer, the insurer or the administrator.”
 

 [3]
 

 NRS 616C.215(10) requires that the jury be instructed that:
 

 Payment of workmen’s compensation benefits by the insurer, or in the case of claims involving the uninsured employers’ claim fund or a subsequent injury fund the administrator, is based upon the fact that a compensable industrial accident occurred, and does not depend upon blame or fault. If the plaintiff does not obtain a judgment in his favor in this case, he is not required to repay his employer, the insurer or the administrator any amount paid to him or paid on his behalf by his employer, the insurer or the administrator.
 

 If you decide that the plaintiff is entitled to judgment against the defendant, you shall find his damages in accordance with the court’s instructions on damages and return your verdict in the plaintiff’s favor in the amount so found without deducting the amount of any compensation benefits paid to or for the plaintiff. The law provides a means by which any compensation benefits will be repaid from your award.
 

 [4]
 

 Cramer’s attorney told the jury on three occasions during closing arguments to award Cramer nothing if it did not believe him, saying at one point:
 

 [Cramer]’s the one who gets put on trial. He’s the one who there are daggers being thrown at him throughout the trial, throughout the'discovery process; he’s a liar, he’s dishonest; this is all baloney; this is all crap; none of it is true.
 

 If you believe that, don’t award him a dime. If you think he’s a liar, if you think everything he’s told you is untrue, if you think those pictures are false, if you think they have been doctored, award zero dollars in this case; find for the defense.