TRI-COUNTY EQUIPMENT & LEASING, LLC, Appellant,
v. ANGELA KLINKE, Respondent.

No. 55121

June 28, 2012 286 P.3d 593

*Burton Bartlett & Glogovac, Ltd.*, and *Scott A. Glogovac, Gregory J. Livingston*, and *Michael A. Pintar*, Reno, for Appellant.

*Kilpatrick Johnston & Adler* and *Charles M. Kilpatrick*, Carson City, for Respondent.

## OPINION

By the Court, HARDESTY, J.:

In this appeal, we consider whether proof of California workers' compensation payments can be admitted into evidence in a personal injury action in Nevada. Because Nevada, the forum state, and California, the state in which the payments were made, both have statutes that permit proof of workers' compensation payments to be allowed into evidence in personal injury actions, we conclude that Nevada law governs. Applying Nevada law, we conclude that evidence of the actual amount of workers' compensation benefits paid should have been admitted and that a clarifying jury instruction provided by statute should have been given. We therefore reverse the judgment and remand for further proceedings.

### *FACTS AND PROCEDURAL HISTORY*

Respondent Angela Klinke filed a complaint in a Nevada district court for personal injury against appellant Tri-County Equipment & Leasing, LLC, after a generator towed by a Tri-County truck in Nevada struck Klinke's vehicle, injuring her. At the time of the accident, Klinke was a California resident acting in the course and scope of her employment with her California employer. For her injuries, Klinke received California workers' compensation benefits through her employer. Pursuant to negotiations between the workers' compensation carrier and Klinke's medical providers, Klinke's medical providers allegedly accepted as full payment for their services an amount less than the amount stated in their bills; these types of negotiated discounts are often referred to as "write-downs."

Prior to trial, Klinke and Tri-County filed motions in limine regarding the workers' compensation payments and medical expense write-downs. Klinke sought, in relevant part, to exclude evidence of the workers' compensation payments and write-downs

under the collateral source rule, which bars evidence of payments for injuries made by an independent third party, and she argued that NRS 616C.215, the Nevada statute governing admissibility of workers' compensation payments, did not apply. Conversely, Tri-County argued in its own motion that Klinke's workers' compensation payments were admissible under NRS 616C.215. Tri-County also argued, in opposition to Klinke's motion, that "evidence of California workers['] compensation payments and/or other benefits is admissible under both Nevada and California law as an exception to the collateral source rule." Equating NRS 616C.215 to a provision in the California Labor Code, Tri-County maintained that "just as Nevada provides a mechanism for the full recovery of all monies paid on behalf of an employee for a workers['] compensation claim, so does California." The district court summarily concluded, without citation to legal authority, that NRS 616C.215 did not apply because Klinke had received payments pursuant to California's, rather than Nevada's, workers' compensation scheme. Inexplicably, after addressing NRS 616C.215, the district court failed to address the applicability of California law, despite Tri-County's argument that Klinke's workers' compensation payments were admissible "under *both* California *and* Nevada law."[1] (Emphases added).

After the trial concluded, a jury awarded Klinke damages in the total principal amount of $27,510. The special jury verdict form stated that the award included $17,510 for medical expenses; however, pursuant to the negotiated write-downs, Klinke's medical providers accepted substantially less as full payment for their services. Tri-County subsequently moved the district court to reduce the jury's verdict on the medical cost damages to the amount actually paid, but the district court denied the motion. This appeal followed.

## DISCUSSION

On appeal, Tri-County repeats its view that "under both California and Nevada law, evidence of worker[s'] compensation payments is admissible as an exception to the collateral source rule," which generally renders evidence of a collateral source of payment for an injury inadmissible. *Proctor v. Castelletti*, 112 Nev. 88, 90, 911 P.2d 853, 854 (1996). Because both Nevada, the forum state, and California, the state in which the payments were made, have an interest in this case, and Tri-County addresses the outcome

---

[1]Tri-County subsequently filed a motion for the district court to reconsider its decision, which Klinke opposed. Notably, Tri-County again argued that Klinke's arguments failed under both Nevada and California law, but the district court summarily reiterated that NRS 616C.215 did not apply without addressing the applicability of California law.

under the law of both states, we examine whether a conflict-of-law analysis is necessary. This issue is a question of law and the district court's decision that NRS 616C.215 did not apply must be reviewed de novo. *See Stephans v. State*, 127 Nev. 712, 716, 262 P.3d 727, 730 (2011); *see also Canfora v. Coast Hotels & Casinos, Inc.*, 121 Nev. 771, 775, 121 P.3d 599, 602 (2005).

When the laws of more than one state potentially apply, before undertaking a conflict-of-law analysis, a court should determine whether a conflict of law actually exists. 15A C.J.S. *Conflict of Laws* § 30 (2012). *See, e.g., Johnson v. Nextel Communications, Inc.*, 660 F.3d 131, 138 (2d Cir. 2011); *Estate of Doe v. Islamic Republic of Iran*, 808 F. Supp. 2d 1, 20 (D.D.C. 2011); *Edifecs Inc. v. TIBCO Software Inc.*, 756 F. Supp. 2d 1313, 1317 (W.D. Wash. 2010). "A conflict of law exists when two or more states have legitimate interests in a particular set of facts in litigation, and the laws of those states differ or would produce different results in the case." *AIG Premier Ins. Co. v. RLI Ins. Co.*, 812 F. Supp. 2d 1315, 1321 (M.D. Fla. 2011) (internal quotations omitted). "If there is no conflict, no further analysis is necessary, and *the law of the forum state usually applies.*" 15A C.J.S. *Conflict of Laws* § 30 (2012) (emphasis added); *Edifecs*, 756 F. Supp. 2d at 1317. While both Nevada and California have legitimate interests in this case, as Tri-County argues, evidence of Klinke's workers' compensation payments would be admissible under the law of either state. *See* NRS 616C.215(10); Cal. Lab. Code § 3855 (West 2011).[2] As such, there is no conflict, and Nevada law applies even though Klinke received California workers' compensation payments.[3]

The collateral source doctrine does not change this result. As noted, this court has adopted "a *per se* rule barring the admission of a collateral source of payment for an injury into evidence for any purpose." *Proctor*, 112 Nev. at 90, 911 P.2d at 854. However,

---

[2]Tri-County argued below and on appeal that California Labor Code section 3856 applies. However, that statute addresses liens, not the admissibility of benefits received by an injured employee.

[3]In its order, the district court refused to apply Nevada workers' compensation law because the workers' compensation payments were made in California. However, the district court did not address the application of California law. Even if a conflict existed, Nevada law would apply because the statutory provision at issue, NRS 616C.215(10), is an evidentiary rule. *See Cramer v. Peavy*, 116 Nev. 575, 580, 3 P.3d 665, 669 (2000) (explaining that NRS 616C.215(10) relates to what a jury can consider); *see also* Restatement (Second) of Conflict of Laws § 138 (1971) ("The local law of the forum determines the admissibility of evidence.").

Nevada recognizes a limited exception to the collateral source rule for workers' compensation payments. In *Cramer v. Peavy*, this court expressly held that NRS 616C.215(10) creates an exception to the collateral source rule. 116 Nev. 575, 580, 3 P.3d 665, 669 (2000). Pursuant to NRS 616C.215(10), "[i]n *any* trial of an action by the injured employee . . . against a person other than the employer or a person in the same employ, the jury must receive proof of the amount of all payments made or to be made by the *insurer* or the Administrator [of the Division of Industrial Relations]." (Emphases added.) The court must then instruct the jury to follow the court's damages instructions without reducing any award by the amount of workers' compensation paid, thus leaving unaltered the general substantive law on calculating damages. The jury instruction language specifically suggested by the statute reads:

> Payment of workmen's compensation benefits by the insurer, or in the case of claims involving the Uninsured Employers' Claim Account or a subsequent injury account the Administrator, is based upon the fact that a compensable industrial accident occurred, and does not depend upon blame or fault. If the plaintiff does not obtain a judgment in his or her favor in this case, the plaintiff is not required to repay his or her employer, the insurer or the Administrator any amount paid to the plaintiff or paid on behalf of the plaintiff by the plaintiff's employer, the insurer or the Administrator.

> If you decide that the plaintiff is entitled to judgment against the defendant, you shall find damages for the plaintiff in accordance with the court's instructions on damages and return your verdict in the plaintiff's favor in the amount so found without deducting the amount of any compensation benefits paid to or for the plaintiff. The law provides a means by which any compensation benefits will be repaid from your award.

NRS 616C.215(10). We have previously recognized that this statute benefits both the plaintiff and the defendant by preventing jury speculation as to workers' compensation benefits received. *See Cramer*, 116 Nev. at 581, 3 P.3d at 669.

NRS 616C.215(10)'s application to "*any* trial" gives the statute universal applicability to trials involving a plaintiff receiving workers' compensation payments, at least when the plaintiff is required to first use any recovery to reimburse the insurer for amounts paid.

The Supreme Court of North Carolina addressed a similar issue in *Frugard v. Pritchard*, 450 S.E.2d 744 (N.C. 1994). In that case, the plaintiff was permitted to exclude from her North Carolina trial evidence of Virginia workers' compensation payments that she received as a result of an accident in North Carolina. *Id.* at 744-45.

On appeal, the court addressed whether it ''should hold that under [North Carolina's] case law, evidence of out-of-state worker[s'] compensation payments is not admissible when by statute evidence of in-state payments is admissible.''[4] *Id.* at 746. The court saw ''nothing in the distinction between the[ ] two situations that ma[de] a difference.'' *Id.* Thus, believing that North Carolina ''should have a uniform rule,'' the court concluded ''that evidence of out-of-state worker[s'] compensation payments [was] admissible in actions against third parties.'' *Id.*

In this case, because the primary purpose of the statute is to avoid confusing the jury about the payment and nature of workers' compensation benefits, and their relation to the damages awarded, *Cramer*, 116 Nev. at 580-81, 3 P.3d at 669, the statute should not be construed so narrowly as to apply only to Nevada workers' compensation benefits, thus defeating the statute's purpose in cases in which those benefits have been paid under another state's laws. Nothing in NRS 616C.215(10) precludes its applicability to cases in which workers' compensation payments were made under another state's similar system. In a trial governed by Nevada law, the workers' compensation payments made to an injured employee must be admitted as evidence and the proper instruction regarding the jury's consideration of those payments must be given. The benefits received by both parties in Nevada courts under Nevada law remain the same whether the payments were made under this state's or another state's statutes, and there is no logical reason to treat them differently.[5] Thus, pursuant to NRS 616C.215(10), the evidence of the amounts actually paid should have been admitted and the clarifying instruction given.

Because the amount of workers' compensation payments actually paid necessarily incorporates the written down medical expenses, it is not necessary to resolve whether the collateral source rule applies to medical provider discounts in other contexts.[6]

---

[4]The applicable North Carolina statute required, in relevant part, that '' '[t]he amount of compensation . . . paid or payable on account of such injury or death shall be admissible in evidence in any proceeding against the third party.' '' *Frugard v. Pritchard*, 450 S.E.2d 744, 745 (N.C. 1994) (alterations in original) (quoting N.C. Gen. Stat. § 97-10.2(e)).

[5]Indeed, Tri-County argued below that Klinke's employer ''has locations in both Nevada and California and that its workers['] compensation carrier is the same for both states.''

[6]This court solicited briefing from the parties on the applicability of the collateral source rule to medical provider discounts in other types of cases. The collateral source rule applies '' 'if an injured party received some compensation for his injuries from a source wholly independent of the tort-

*See Sparks v. State*, 121 Nev. 107, 110-11, 110 P.3d 486, 488 (2005) ("Where legislative intent can be clearly discerned from the plain language of the statute, it is the duty of this court to give effect to that intent and to effectuate, rather than nullify, the legislative purpose."). We reverse the judgment of the district court and remand for further proceedings consistent with this opinion. *See Carver v. El-Sabawi*, 121 Nev. 11, 14, 107 P.3d 1283, 1285 (2005) (explaining that "a judgment will . . . be reversed by reason of an erroneous [jury] instruction, [if] upon consideration of the entire case, including the evidence, it appears that such error has resulted in a miscarriage of justice").

DOUGLAS, SAITTA, PICKERING, and PARRAGUIRRE, JJ., concur.

GIBBONS, J., with whom CHERRY, C.J., agrees, concurring:

The two main issues raised by the parties in this appeal are whether Nevada's collateral source rule applies to the payment of California workers' compensation benefits to Klinke and whether it applies to medical provider discounts. I concur with the majority's decision to reverse the district court judgment. The district court should have addressed California workers' compensation law since Klinke received California workers' compensation benefits. While I also concur with footnote 6 in the majority opinion in that

feasor . . . .' " *Proctor v. Castelletti*, 112 Nev. 88, 90 n.1, 911 P.2d 853, 854 n.1 (1996) (quoting *Hrnjak v. Graymar, Incorporated*, 484 P.2d 599, 602 (Cal. 1971)). Several courts have addressed the applicability of the collateral source rule to medical provider discounts in cases other than workers' compensation payments. *Compare Aumand v. Dartmouth Hitchcock Medical Center*, 611 F. Supp. 2d 78, 91-92 (D.N.H. 2009) (applying New Hampshire Law); *Lopez v. Safeway Stores, Inc.*, 129 P.3d 487, 496 (Ariz. Ct. App. 2006); *Montgomery Ward & Co., Inc. v. Anderson*, 976 S.W.2d 382, 385 (Ark. 1998); *Mitchell v. Haldar*, 883 A.2d 32, 40 (Del. 2005); *Goble v. Frohman*, 848 So. 2d 406, 409-10 (Fla. Dist. Ct. App. 2003); *Dyet v. McKinley*, 81 P.3d 1236, 1238-39 (Idaho 2003), *abrogated on other grounds by Verska v. St. Alphonsus Regional Med. Ctr.*, 265 P.3d 502, 507-09 (Idaho 2011); *Wills v. Foster*, 892 N.E.2d 1018, 1032-33 (Ill. 2008); *Haygood v. De Escabedo*, 356 S.W.3d 390, 398 (Tex. 2011), *with Howell v. Hamilton Meats & Provisions, Inc.*, 257 P.3d 1130, 1138 (Cal. 2011); *Stanley v. Walker*, 906 N.E.2d 852, 856-57 (Ind. 2009); *Martinez v. Milburn Enterprises, Inc.*, 233 P.3d 205, 229 (Kan. 2010); *Robinson v. Bates*, 857 N.E.2d 1195, 1202 (Ohio 2006); *Haselden v. Davis*, 579 S.E.2d 293, 294 (S.C. 2003). From these competing authorities, it is apparent that there are numerous reasons for medical provider discounts, including discounts that result when an injured party's insurance company has secured medical provider discounts as part of the health insurance plan. At least in those circumstances, such benefits may reside within the scope of the collateral source rule, although that is a legal issue we leave for a case that requires its determination. Whether the collateral source rule applies to other types of medical expense discounts would require evidence of the reason for the discount and its relationship to the third-party payment.

medical provider discounts appear to reside within the scope of Nevada's collateral source rule, I would address this issue since the parties briefed and argued it in both the district court and this court. In doing so, I conclude that Nevada's collateral source rule bars the admission of evidence showing medical provider discounts or "write-downs."

Nevada's collateral source rule is a *per se* rule that bars the introduction of evidence that a plaintiff has received compensation for his or her injuries from a third party wholly independent of the tortfeasor. *Proctor v. Castelletti*, 112 Nev. 88, 90 & n.1, 911 P.2d 853, 854 & n.1 (1996); *see also Winchell v. Schiff*, 124 Nev. 938, 945-46, 193 P.3d 946, 951 (2008); *Bass-Davis v. Davis*, 122 Nev. 442, 453-54, 134 P.3d 103, 110 (2006). *Proctor* dealt with a personal injury lawsuit in which the district court permitted the defendant to admit evidence of the plaintiff's disability insurance payments. 112 Nev. at 89, 911 P.2d at 853. In *Proctor*, we adopted "a *per se* rule barring the admission of a collateral source payment for an injury into evidence for any purpose." *Id.* at 90, 911 P.2d at 854. In doing so, we followed the United States Supreme Court's lead, *Eichel v. New York Central Railroad Co.*, 375 U.S. 253 (1963), in concluding that "[c]ollateral source evidence inevitably prejudices the jury because it greatly increases the likelihood that a jury will reduce a plaintiff's award of damages because it knows the plaintiff is already receiving compensation," and therefore, "the prejudicial impact of collateral source evidence *inevitably* outweighs the probative value of such evidence." *Proctor*, 112 Nev. at 90-91, 911 P.2d at 854 (further explaining that "there is no circumstance in which a district court can properly exercise its discretion in determining that collateral source evidence outweighs its prejudicial effect"). Ultimately, we held that the district court erred in admitting evidence of disability insurance payments. *Id.* at 91, 911 P.2d at 854.

Likewise, in *Bass-Davis*, the district court, in an action seeking damages for lost wages, admitted evidence that Bass-Davis received a paycheck during her four-month leave of absence following surgery on an injury. 122 Nev. at 447, 134 P.3d at 106. We held that the district court erred in admitting evidence that Bass-Davis received compensation from her employer during a leave of absence. *Id.* at 454, 134 P.3d at 110-11. In doing so, we determined that the evidence of compensation damaged the jury's determination of Bass-Davis's credibility and prejudiced Bass-Davis's ability to receive fair compensation for injuries caused by the defendant. *Id.* at 454, 134 P.3d at 111.

"[T]he focal point of the collateral source rule is not whether an injured party has 'incurred' certain medical expenses. Rather, it is

whether a tort victim has received benefits from a collateral source that cannot be used to reduce the amount of damages owed by a tortfeasor." *Acuar v. Letourneau*, 531 S.E.2d 316, 322 (Va. 2000). In general, the medical provider and the third-party insurer paying the medical costs on behalf of the insured tort victim negotiate the write-downs. The reduced amounts are "as much of a benefit for which [a plaintiff] paid consideration [in the form of insurance premiums] as are the actual cash payments made by his health insurance carrier to the health care providers. . . . [The write-downs] constitute 'compensation or indemnity received by a tort victim from a source collateral to the tortfeasor . . . .' " *Id.* at 322-23 (quoting *Schickling v. Aspinall*, 369 S.E.2d 172, 174 (Va. 1988)). As a result, evidence of write-downs creates the same risk of prejudice that the collateral source rule is meant to combat. *See id.* at 322.

Evidence of payments showing write-downs is irrelevant to a jury's determination of the reasonable value of the medical services and will likely lead to jury confusion. *See Leitinger v. DBart, Inc.*, 736 N.W.2d 1, 18 (Wis. 2007) (noting that write-downs may "bring complex, confusing side issues before the fact-finder that are not necessarily related to the value of the medical services rendered"). The write-downs reflect a multitude of factors mostly relating to the relationship between the third party and the medical provider, and not necessarily relating to the reasonable value of the medical services. *See Martinez v. Milburn Enterprises, Inc.*, 233 P.3d 205, 228 (Kan. 2010). Here, the evidence of the write-downs could have confused the jury because Tri-County itself was unsure of the amounts. The inconsistencies in the calculations presented to the district court, which Tri-County only clarified in its reply brief to this court, evidence this.

My conclusion that the collateral source rule bars the introduction of evidence showing medical provider discounts or write-downs is consistent with a majority of jurisdictions that have addressed this issue.[1] All of the jurisdictions that have concluded that

---

[1] *See Aumand v. Dartmouth Hitchcock Medical Center*, 611 F. Supp. 2d 78, 91-92 (D.N.H. 2009); *Pipkins v. TA Operating Corp.*, 466 F. Supp. 2d 1255, 1261-62 (D.N.M. 2006); *Lopez v. Safeway Stores, Inc.*, 129 P.3d 487, 496 (Ariz. Ct. App. 2006); *Montgomery Ward & Co., Inc. v. Anderson*, 976 S.W.2d 382, 385 (Ark. 1998); *Tucker v. Volunteers of America Co. Branch*, 211 P.3d 708, 712-13 (Colo. App. 2008) (interpreting a statutory exception to Colorado's statutory collateral source rule); *Mitchell v. Haldar*, 883 A.2d 32, 40 (Del. 2005); *Hardi v. Mezzanotte*, 818 A.2d 974, 984-85 (D.C. 2003); *Olariu v. Marrero*, 549 S.E.2d 121, 123 (Ga. Ct. App. 2001); *Bynum v. Magno*, 101 P.3d 1149, 1162 (Haw. 2004); *Wills v. Foster*, 892 N.E.2d 1018, 1032-33 (Ill. 2008); *Baptist Healthcare Systems, Inc. v. Miller*, 177 S.W.3d 676, 683-84 (Ky. 2005); *Bozeman v. State*, 879 So. 2d 692, 705-06 (La. 2004); *Brandon HMA, Inc. v. Bradshaw*, 809 So. 2d 611, 619-20 (Miss.

evidence of write-downs of medical expenses is inadmissible have done so pursuant to their common law collateral source rule, except Colorado and Oregon, which have statutory collateral source rules. *See Tucker*, 211 P.3d at 711-13; *White*, 219 P.3d at 583. While I recognize that there are other approaches to the admissibility of payments showing medical cost write-downs,[2] I agree with the holdings of the majority of jurisdictions that evidence of medical cost write-downs is inadmissible.

Further, when medical write-downs occur, one party is likely to receive a windfall. If the write-downs cause one party to receive a windfall, it should be the insured plaintiff, not the tortfeasor. *See Lopez v. Safeway Stores, Inc.*, 129 P.3d 487, 496 (Ariz. Ct. App. 2006) (" 'Because the law must sanction one windfall and deny the other, it favors the victim of the wrong rather than the wrongdoer.' " (quoting *Acuar v. Letourneau*, 531 S.E.2d 316, 323 (Va. 2000)); *see also* Restatement (Second) of Torts § 920A cmt. b (1979) ("[I]t is the position of the law that a benefit that is directed to the injured party should not be shifted so as to become a windfall for the tortfeasor."); 22 Am. Jur. 2d *Damages* § 392 (2012) ("If there is a windfall, it is considered more just that the injured person profit rather than grant the wrongdoer relief from full responsibility for the wrongdoing."). Thus, Nevada's collateral source rule bars the introduction of evidence of medical provider discounts or "write-downs."

---

2001); *Brown v. Van Noy*, 879 S.W.2d 667, 676 (Mo. Ct. App. 1994); *White v. Jubitz Corp.*, 219 P.3d 566, 583 (Or. 2009); *Covington v. George*, 597 S.E.2d 142, 144-45 (S.C. 2004); *Papke v. Harbert*, 738 N.W.2d 510, 536 (S.D. 2007); *Radvany v. Davis*, 551 S.E.2d 347, 348 (Va. 2001); *Leitinger*, 736 N.W.2d at 18.

[2]*See, e.g.*, *Howell v. Hamilton Meats & Provisions, Inc.*, 257 P.3d 1130 (Cal. 2011) (upholding California's common law requirement that the trial court adjust the amount of medical damages to ensure that a plaintiff does not receive more than what was actually paid to medical providers).