Louis R. TESTA, Plaintiff, Appellee,

v.

WAL–MART STORES, INC., Defendant, Appellant.

No. 97–2079.

United States Court of Appeals, First Circuit.

Heard May 4, 1998.

Decided May 21, 1998.

George R. Moore, with whom Bret D. Gifford and Devine, Millimet & Branch, P.A. were on brief, for Appellant.

Stewart S. Richmond, Jr., with whom Scott H. Harris and McLane, Graf, Raulerson & Middleton, P.A. were on brief, for Appellees.

Before TORRUELLA, Chief Judge, SELYA and LYNCH, Circuit Judges.

SELYA, Circuit Judge.

Defendant-appellant Wal–Mart Stores, Inc. (Wal–Mart) insists that the jury verdict in this piscine personal injury case results from instructional error. After careful perlustration of the record, we conclude that Wal–Mart is fishing in an empty stream.

## I. BACKGROUND

Plaintiff-appellee Louis R. Testa worked as a truck driver for Heavenly Fish, a wholesaler of tropical fish. On February 2, 1993, Testa arrived at a brand new Wal–Mart retail outlet in Hinsdale, New Hampshire, with merchandise in tow. He parked his van on the delivery ramp behind the store and alerted Wal–Mart to his arrival. A Wal–Mart employee helped Testa unload his ichthyic cargo. In the process, Testa slipped on the snow-and-ice-coated ramp, fell, and injured himself.

Wal–Mart photographed the ramp that day and proceeded to conduct a full investigation of the incident. Before the month was out, a Wal–Mart employee prepared an internal report noting, *inter alia,* that Testa had threatened to sue.

On April 24, 1995, Testa made good on his word. Invoking diversity jurisdiction, *see* 28 U.S.C. § 1332(a), Testa sued Wal–Mart in New Hampshire's federal district court. Wal–Mart denied that it had committed any actionable negligence. It pointed out that the mishap occurred on the day of the Hinsdale store's grand opening and, anticipating a huge turnout, it wanted the staff's attention focused exclusively on customer service. To that end, it asserted that Rachelle Manning, an invoice clerk, informed all vendors on February 1 that Wal–Mart would not accept

deliveries the following day. Thus, Wal–Mart explained, it did not bother to clear the ramp on February 2 because it believed that no deliveries would be forthcoming. In addition to this defense, Wal–Mart also suggested that Testa had assumed the risk of using the icy ramp and that his negligence caused (or at least contributed to) the occurrence of the accident.

The trial itself was brief but jury deliberations were protracted. Eventually, the jury returned a verdict for the plaintiff in the sum of $55,112. This appeal ensued.

## II. THE JURY'S QUESTION

After nearly five hours of deliberation, the jury sent a note to the judge which read in pertinent part: "Your Honor, can we please have a review of the law 'negligence', and [its] relation to proximate cause?" [1] The judge consulted with counsel and responded to this query by re-reading his original charge on negligence and proximate cause. The judge asked the jury if the supplemental instruction satisfied their request and the foreperson responded affirmatively.

The error that Wal–Mart perceives is less with what the judge said than with what he did not say. Over Wal–Mart's objection, Judge Devine declined to re-read his charge on comparative negligence as part and parcel of the supplemental instruction. In this vein, the judge noted that "you don't get to comparative negligence until or unless [the jurors] establish that there is negligence existing on the part of the defendant, and their question specifically asks for negligence and proximate cause." Based on this scenario, Wal–Mart maintains that the trial court erred by refusing to include language anent comparative negligence in the supplemental instruction.

We ordinarily review jury instructions to discern whether they adequately illuminate the law applicable to the controverted issues in the case without unduly complicating matters or misleading the jury. *See Levinsky's, Inc. v. Wal–Mart Stores, Inc.,* 127 F.3d 122, 135 (1st Cir.1997). In that process, we examine the instructions as a whole rather than taking each fragment in isolation. *See United States v. DeStefano,* 59 F.3d 1, 3 (1st Cir.1995). Withal, a jury instruction given after deliberations have begun comes at a particularly delicate juncture and therefore evokes heightened scrutiny. *See Bollenbach v. United States,* 326 U.S. 607, 612, 66 S.Ct. 402, 90 L.Ed. 350 (1946); *Tart v. McGann,* 697 F.2d 75, 77 (2d Cir. 1982).

Careful craftsmanship of a supplemental jury instruction requires the district court to walk a fine line—the court can err as easily by overinclusiveness as by underinclusiveness. *See Tatro v. Kervin,* 41 F.3d 9, 15 (1st Cir.1994) (warning that "extra language" may erroneously mislead a jury); *United States v. Parent,* 954 F.2d 23, 25 (1st Cir. 1992) (cautioning against "gratuitous pererrations" in the course of supplemental jury instructions). Understandably concerned about this phenomenon, Judge Devine gave the jury accurate legal standards concerning the precise area of their inquiry—negligence and proximate cause—and eschewed a broader compass. He thus avoided the possible confusion that might have been engendered had he volunteered an instruction that the jury had not requested.

Wal–Mart contends that, even if the district court's supplemental instruction adequately responded to the letter of the jury's inquiry, it did not capture the spirit. In Wal–Mart's view, all negligence concepts are linked, more so in this case. Thus, the jury's query necessarily implied a curiosity about comparative negligence and suggested that the court, to be fair, should give an additional instruction that the jury lacked the sophistication to ask for specifically. We reject this conjectural construct. It amounts to nothing more than rank speculation—and we are unwilling to overturn a jury verdict on the basis of sheer surmise.

Here, moreover, the surrounding circumstances suggest that Wal–Mart's speculation likely is unfounded. For one thing, as Judge Devine remarked, comparative negli-

---

1. The note also contained another question, but the appellant does not assign error to the judge's handling of the second question and we therefore eschew any discussion of it.

gence is an affirmative defense under New Hampshire law, *see Brann v. Exeter Clinic, Inc.,* 127 N.H. 155, 498 A.2d 334, 336–337 (1985), and a jury logically would not be expected to reach that issue until it first had resolved the question of negligence. For another thing, after Judge Devine gave the supplemental instruction, the jury foreperson responded that the panel's question had been fully answered. Although this response, in itself, is not conclusive—as the appellant ruminates, the forelady might have spoken only for herself or might have grown bashful in an unaccustomed spotlight—it is at least some evidence that the jury received exactly what had been requested.

■ We will not paint the lily. The usual rule, to which we subscribe, is that when a jury question is received during deliberations, the judge must address only those matters fairly encompassed within the question. *See Parent,* 954 F.2d at 25; *Stathos v. Bowden,* 728 F.2d 15, 19 (1st Cir.1984); *Jury v. R & G Sloane Mfg. Co.,* 666 F.2d 1348, 1352–53 (10th Cir.1981); *see also United States v. Ladd,* 885 F.2d 954, 961 (1st Cir.1989) (stating that a judge, in answering a question posed by a deliberating jury, normally should "confine his response to the approximate boundaries of the jury's inquiry").[2] It is a corollary of this rule that the trial judge has discretion to embellish his answer as he reasonably may deem advisable. *See United States v. Bayer,* 331 U.S. 532, 536, 67 S.Ct. 1394, 91 L.Ed. 1654 (1947) (explaining that "once the judge has made an accurate and correct charge [in response to a jury's question], the extent of [any] amplification must rest largely on his discretion"); *see also Elliott v. S.D. Warren Co.,* 134 F.3d 1, 6 (1st Cir.1998) (stating that "within wide limits, the method and manner in which the judge carries out this obligation [to inform the jury about the applicable law] is left to his or her discretion"). The operative word, however, is "discretion". We do not doubt that Judge Devine could have repeated his comparative negligence instruction as a part of his answer to the jury's question if he

believed that doing so would help the jury to understand the concepts of negligence and proximate cause. But we see nothing in the circumstances of this case that compelled the judge to add such an embellishment or that otherwise required a deviation from the customary praxis. Consequently, the appellant's first assignment of error fails.

## III. DESTRUCTION OF BUSINESS RECORDS

■ Wal–Mart contends that the trial court committed a second instructional error. Manning testified that she had put a hold on the order previously placed with Heavenly Fish on February 1, 1993, thus bolstering Wal–Mart's claim that it had no reason to clear the delivery ramp on February 2. At trial, however, Wal–Mart was unable to produce either the purchase order addressed to Heavenly Fish or the telephone records for February 1 (the date when Manning claims to have called). According to Wal–Mart, Manning discarded these records in or around February 1995 (a few months before Testa brought suit), pursuant to a standard record-retention policy. Manning stated that she did not know about the accident at the time and no one instructed her to preserve either the purchase order or the telephone records.

Despite Wal–Mart's protest that it acted in good faith and without notice of the destroyed records' relevance, the district court instructed the jury that:

> A reasonable inference is a deduction which common sense and reason lead you to draw from the evidence. An example is one inference that the plaintiff seeks to have you draw here is to the effect that the defendant, having known that a lawsuit was pending, destroyed certain records and did so because defendant knew the records to be harmful to its own case. But the law holds that such an inference can be drawn only if the plaintiff proves by a preponderance of the evidence that [the defendant] not only knew of the potential

---

**2.** A different rule sometimes may apply in criminal cases, as a court often must take particular pains to remind a deliberating jury of the presumption of innocence, the burden of proof, the defendant's right to remain silent, and kindred matters. *See Bollenbach,* 326 U.S. at 613–14, 66 S.Ct. 402. No such concerns are raised in this civil action.

claim of the plaintiff, but also knew of the potential relevance of the destroyed documents. And even where plaintiff satisfies this burden of proof, any inference that may be drawn is permissive and not mandatory. That is, such inference may or may not be drawn by the jury.

The appellant challenges the propriety of this instruction insofar as it allowed the jury to draw a permissive negative inference from the unavailability of the purchase order and the telephone records.

 We have held with some regularity that a trier of fact may (but need not) infer from a party's obliteration of a document relevant to a litigated issue that the contents of the document were unfavorable to that party. *See, e.g., Blinzler v. Marriott Int'l, Inc.,* 81 F.3d 1148, 1158 (1st Cir.1996); *Anderson v. Cryovac, Inc.,* 862 F.2d 910, 925 (1st Cir.1988); *Nation–Wide Check Corp. v. Forest Hills Distributors, Inc.,* 692 F.2d 214, 217–18 (1st Cir.1982). This permissive negative inference springs from the commonsense notion that a party who destroys a document (or permits it to be destroyed) when facing litigation, knowing the document's relevancy to issues in the case, may well do so out of a sense that the document's contents hurt his position. *See Beil v. Lakewood Eng'g & Mfg. Co.,* 15 F.3d 546, 552 (6th Cir.1994). Consistent with this rationale, a suitable foundation must exist before such an inference can materialize. Thus, the sponsor of the inference must proffer evidence sufficient to permit the trier to find that the target knew of (a) the claim (that is, the litigation or the potential for litigation), and (b) the document's potential relevance to that claim. *See Blinzler,* 81 F.3d at 1159. Moreover, even if these foundational requirements have been met, the trier nonetheless may refuse to draw the negative inference. In other words, the inference is permissive, not mandatory. *See id.*

Wal–Mart acknowledges this doctrine, but labors to convince us that Testa failed to lay an adequate foundation in this instance. We are not persuaded.

We think it is obvious that a rational jury could conclude that Wal–Mart was on notice of Testa's claim. The accident occurred on February 2, 1993. Wal–Mart investigated immediately and, as early as February 18, 1993, Wal–Mart completed an internal accident report in which it acknowledged Testa's inclination to sue. There is nothing in the record that would have dispelled this premonition.

By like token, a rational jury also could conclude that Wal–Mart was on notice of the records' relevance. After all, Wal–Mart's defense from the start was anchored on the premise that it had no reason to anticipate any deliveries on the day in question. Surely, then, a reasonable factfinder could view Wal–Mart's placing of a purchase order for delivery on February 2 to be antagonistic to this defense. The telephone records showing whether Manning in fact called Heavenly Fish to abrogate the purchase order (and if so, when) also would bear on this line of defense.[3] Accordingly, a jury could find that Wal–Mart had ample notice of both the claim and the relevance of the records.

 Wal–Mart offers two rejoinders. First, it points to evidence showing that it destroyed the documents not for a nefarious purpose, but only in compliance with a corporate record-retention policy. We readily agree that evidence that documents were destroyed in the ordinary course of business, pursuant to routine practice, is material to the inquiry, but the mere introduction of such evidence neither removes the question from the jury's ken nor precludes the jury from drawing a negative inference. *See Nation–Wide Check,* 692 F.2d at 219.

 Second, Wal–Mart notes that there is no proof that Manning (the Wal–Mart employee who actually discarded the records) knew of either the claim or the records' relevance to it. This is true as far as it goes—but it does not go very far. Whether

---

**3.** Wal–Mart argues that these documents would be cumulative of Manning's testimony, but that argument begs the question. The records would be cumulative only if they matched Manning's recollection, and their destruction precluded the plaintiff (and the jury, for that matter) from ascertaining whether the records and the testimony were consistent.

the particular person who spoils evidence has notice of the relationship between that evidence and the underlying claim is relevant to the factfinder's inquiry, but it does not necessarily dictate the resolution of that inquiry. The critical part of the foundation that must be laid depends, rather, on institutional notice—the aggregate knowledge possessed by a party and its agents, servants, and employees. *See Blinzler,* 81 F.3d at 1158–59; *Nation–Wide Check,* 692 F.2d at 217–18. Here, the preconditions for jury submission of the permissive negative inference were fully satisfied.

We need go no further. We hold that, on these facts, the district court properly told the jury that it could (but need not) draw a negative inference if the plaintiff proved by a preponderance of the evidence that, when Wal–Mart destroyed the documents, it had notice both of a potential lawsuit and of the documents' relevance to the claim that underlay such a suit.

*Affirmed.* **Costs to appellee.**