# United States Court of Appeals
## For the First Circuit

No. 17-1016

WILLIAM MCDONALD,

Plaintiff, Appellant,

v.

TOWN OF BROOKLINE,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Rya W. Zobel, U.S. District Judge]

Before

Torruella, Stahl, and Thompson,
Circuit Judges.

John F. Palmer, with whom the Law Office of John F. Palmer
was on brief, for appellant.
Patricia Correa on brief for appellee.

July 12, 2017

**STAHL**, <u>**Circuit Judge**</u>. William McDonald was fired from his job in the Town of Brookline's ("Town") Department of Public Works in May 2009 for unjustified absences from work and failing to provide adequate documentation for his use of sick leave. McDonald filed a complaint against his former employer in federal district court, alleging that his termination violated the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12103 <u>et seq</u>. McDonald alleged that he had been suffering from sleep apnea and the Town terminated him on the basis of his poor work performance that resulted from this disability, and failed to make reasonable accommodations for his disability. After a six-day trial, a jury in the District of Massachusetts found in favor of the Town. McDonald now appeals, arguing that the district court erred in its jury instructions. Finding no basis for that contention, we **AFFIRM.**

### I. Facts & Background

McDonald joined the Town's Public Works Department in 2003, when he was hired as a Motor Equipment Operator II and Laborer in the Highway and Sanitation Division. McDonald's duties and specific assignments varied and were spread among three subdivisions: the Town could assign him to Highway (street sweeping, potholes, plowing, and road maintenance), Traffic (maintenance and installation of road signs, lighting, and poles), or Sanitation (driving or riding on the back of garbage trucks

- 2 -

during collections), depending on the needs of the Department and other factors such as weather and road conditions.  In the two years leading up to the events in question in this case, McDonald was principally assigned to the Traffic division, but was asked to fill in on the Sanitation crew on approximately six occasions.

Although he generally received positive work performance reviews from his supervisor during his first several years on the job, McDonald also struggled with substance abuse issues and, beginning in 2008, began to receive complaints about his use of sick leave.  For instance, on March 4, 2008, his supervisor wrote to him that his sick leave record was unacceptable and that he needed to provide further documentation from a physician to justify recent absences.  In July 2008, McDonald submitted a doctor's note on a day when he was absent from work.  However, during the civil trial in his case against the Town, he admitted that he was absent from work that day because of a mandatory court appearance arising from a previous drug-related arrest.  On September 2, 2008, the Town suspended McDonald from work for three days for what it claimed was sick leave abuse.

The events that ultimately sealed McDonald's fate took place in the winter and spring of 2009.  On the one hand, Brookline experienced a particularly bad winter that year, and McDonald clocked a significant amount of overtime hours to assist the Sanitation division with snow removal efforts.  On the other hand,

McDonald was frequently absent from work.  In January, he took a number of sick days and bereavement leave to tend to his father, who had been seriously injured in an accident during the previous fall and ultimately passed away in late January 2009.  On February 12, 2009, McDonald called in sick because he was experiencing "flu-like symptoms" and was feeling "run down."  Several days later, on February 18, 2009, McDonald went to the emergency room at Beth Israel Deaconess Hospital ("BIDH") and complained that he felt tired, achy, and was experiencing "sweats."  He was diagnosed with bronchitis, given a prescription for Levaquin, and sent home.

The next day, February 19, the DPW Commissioner sent McDonald a notice informing him that he was to appear at a disciplinary hearing on March 2, 2009, to address "unsubstantiated questionable sick leave."  That notice specifically informed McDonald that he faced possible termination for these violations.  On February 20, he visited his primary care physician to procure medical documentation supporting his absences, and renewed his complaints about various symptoms (nausea, vomiting, diarrhea, and "night sweats") that he had previously raised at the BIDH emergency room.  The physician wrote him a note to cover his absence from work.  Somewhere around this same time, he also visited a psychologist for difficulties that he was having with sleeping.  The psychologist referred him to a sleep study at BIDH on March 7, 2009.  Additionally, a follow-up letter from the Town to McDonald,

dated February 24, 2009, clarified that McDonald was suspended from active employment pending the March 2 hearing. However, after McDonald provided the Town with an authorization to obtain records from his primary physician, the Town was apparently satisfied that the most recent absences had been medically justified, and it withdrew his suspension and reimbursed McDonald for the days that he had been suspended.

This rapprochement, however, was short-lived. Upon his return to work, McDonald complained of being assigned to the Sanitation division because he had difficulty "keeping up" with the physical nature of the work. He was sent home on March 19 after refusing to perform sanitation work. His physician, reviewing the results from McDonald's March 7 study, concluded that McDonald was suffering from sleep apnea, and suggested he see a sleep specialist "ASAP." He also wrote him a physician's note to return to work which indicated that McDonald was being treated for "fatigue and a related disorder" and that he should be performing "light duty for the foreseeable future."

The Town, in a March 23 letter authored by DPW Commissioner Thomas DeMaio, requested further information and documentation from McDonald regarding the "medical reasons for the request for light duty," and informed him that he could not come back to work until that information had been received and until "a determination [has been] made as to your employment status." On

March 27, the Town's Assistant Director of Human Resources sent McDonald a letter informing him of his rights under the Family Medical Leave Act ("FMLA") and enclosing a form that McDonald could fill out if he was interested in applying for FMLA leave. McDonald, who had follow-up appointments scheduled with his physician and his sleep specialist on March 31 and April 2, respectively, did not reply to the DeMaio letter until April 6, at which time he reiterated his request for light duty and enclosed the sleep study along with another copy of the March 19 note from his physician. He never filed the FMLA form.

Thereafter, the parties exchanged a series of letters throughout April 2009. McDonald continued to complain of fatigue, and the sleep study raised a concern on the part of the Town that he could become drowsy while operating heavy equipment. The Town continued to find McDonald's supporting documentation insufficient to justify his use of sick leave, and at times even found the information inconsistent and contradictory. The record, as well as the briefing by the Town to this court, suggests that the Town believed that McDonald's symptoms were the product of substance abuse withdrawal and that they believed he was using sick leave as a cover for these problems. McDonald apparently did not disclose his substance abuse issues to the medical professionals that he met with during the relevant time period.

- 6 -

By mid-April, McDonald had exhausted his available leave, and on April 16, the HR Director sent him what she described as a "wake-up call" letter, informing McDonald that the documentation that the Town had received was insufficient and that he was subject to termination if he continued to be absent from work without permission. McDonald responded the next day that he would be submitting a comprehensive report from his physician once his follow-up appointments and evaluations were completed in a week or two. On April 21, the DPW Deputy Commissioner sent McDonald a letter informing him that he would be considered absent without pay, an offense which could lead the Town to view McDonald as having "voluntarily and permanently separated [himself] from employment consistent with" Massachusetts law,[1] unless he submitted a completed FMLA leave request form or other sufficient documentation. The Deputy Commissioner enclosed a new FMLA form along with that letter, as McDonald had not returned the one that the Town had previously sent him in March.

McDonald arranged for a follow-up appointment with the sleep specialist on May 2 and arranged to be fitted with a CPAP mask and machine to wear at night to address his sleep apnea. Although he was informed that the equipment would be delivered within a week, and the sleep specialist advised him that he could

---

[1] The letter specifically cited Mass. Gen. Laws ch. 31, § 38.

return to work in mid-May, he did not respond to the Deputy Commissioner's letter of April 21, nor did he call anyone at the Town to discuss his recent medical appointments and to address the Town's explicitly stated warning that he would be deemed as having abandoned his position (which the Town had kept open since March 19) if he did not promptly provide them with either specific documentation or with a completed FMLA leave request form. Finally, having not heard from McDonald, on May 12, the Town sent him a letter informing him that his employment was being terminated because he had failed to provide adequate medical documentation to justify his absences, had not applied for or been granted a leave of absence, and had been absent from work without authorization for more than fourteen days. This notice also informed McDonald that he had the right to a hearing to challenge this decision.

McDonald quickly responded by sending two letters to the Town on May 14, one enclosing a request for leave under the FMLA signed by his physician and attaching his sleep specialist's follow-up report from the May 2 visit, and the second requesting a post-termination hearing. His FMLA form requested an additional three months leave to adjust to the CPAP machine, notwithstanding his sleep doctor's report that noted that McDonald should be able to return to work in mid-May.

His hearing was scheduled for June 10, 2009. McDonald did not contact his union representatives for assistance at the

- 8 -

hearing; however, a union representative nonetheless attended the hearing and took notes. At the hearing, McDonald did not offer any evidence or medical information, did not offer any argument when presented with evidence that he had separated himself from his employment, and responded "correct" when asked if he viewed himself as having voluntarily abandoned his job. Following the conclusion of the hearing, the Town sent McDonald a post-hearing decision letter on June 16, 2009, noting that McDonald had not asked for a leave of absence and had offered no evidence at the hearing to rebut the Town's position that he had voluntarily separated himself from his job. His termination, effective May 12, 2009, was upheld.

On May 7, 2012, McDonald filed a pro se complaint against the Town in the District Court for the District of Massachusetts. In his complaint, McDonald alleged that the Town had violated the ADA by discriminating against him on the basis of his sleep apnea disability, denying him a reasonable accommodation, and failing to engage in an interactive dialogue as required under the ADA. McDonald later procured counsel and requested a jury trial, which began on September 12, 2016. At the close of the six-day trial, McDonald submitted proposed jury instructions that included, most relevantly, the following language (emphasis added):

> 1. . . . A reasonable accommodation may include: job restructure; part-time or modified work schedule; reallocation of job duties; leave of

absence and leave extension; additional leave beyond that allowed in leave policy; and other similar accommodations for individuals with Plaintiff's disabilities . . . .

2. The duty to provide a reasonable accommodation is a continuing one . . . . It may extend beyond the decision to terminate Plaintiff if the Defendant is provided with new or additional information that provides a basis for the claim that Plaintiff suffers from a disability which may require an accommodation.

3. An employee's request for an accommodation triggers a duty on the part of the employer to engage in an interactive process . . . . The obligation to engage in an interactive process, like the duty to provide an accommodation, may extend beyond the termination of employment.

The district court, however, did not include the underlined portions of McDonald's proposed instructions in its charge to the jury. Instead, the district court informed the parties that by not explicitly informing the jury that they could consider post-termination evidence, she was not "precluding" counsel from arguing that post-termination activities on the part of the Town could factor into the jury's consideration of whether the Town made a reasonable accommodation to the plaintiff's disability. The Court informed counsel that it was not the court's role to "outline to the jury all the evidence" with respect to what constitutes a reasonable accommodation, but reiterated that it was "fine for you [counsel] to argue" that point to the jury.

The district court's instructions informed the jury that the ADA and its implementing regulations indicated that a

- 10 -

"reasonable accommodation may include making existing facilities used by employees readily accessible to and usable by individuals with disability, restructuring the job, part-time or modifying work schedules."[2]  The instructions also informed the jury that "[i]t may be necessary for the employer to initiate an informal interactive process with the employee with a disability in need of accommodation.  This process should identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations."  When evaluating whether the plaintiff was disabled within the meaning of the ADA framework, the court instructed the jury that "the only relevant condition in response to this question is sleep apnea," and that "evidence of drug or alcohol abuse may not be considered in deciding this question."

Summarizing the employer's obligations under the ADA, the court instructed the jury as follows:

> While the [T]own does not have to provide a specific accommodation requested by the plaintiff, it has to provide a reasonable one within its existing working requirements and environment.  It does not have to provide an accommodation that would create for itself an undue hardship that would cause increased costs, bad impact on other employees, constraints imposed by its workforce structure or the location of its several facilities, but it does have to make an effort to provide a reasonable accommodation to allow the disabled employee to perform work.  The law contemplates

---

[2] See 42 U.S.C. § 12111(9)(B).

that the process of arriving at a reasonable accommodation be accomplished by an interactive process between the employee and the employer who should identify the precise limitations resulting from the employee's disability and a potential accommodation appropriate to those limitations.

McDonald's attorney renewed his objections to the failure to include post-termination activities in the jury instructions; however, he did not specifically object on the ground that the instructions should have explicitly listed approved leave as an example of a reasonable accommodation. On September 19, 2016, the jury returned its verdict on special questions and found in favor of the Town, concluding that it had not terminated McDonald on the basis of his disability and that the Town did not fail to reasonably accommodate him and his disability.[3] The Court entered judgment against McDonald on October 5, 2016. After his motion for a new trial was denied on November 21, 2016, McDonald filed a timely appeal to this court.

## II. Discussion

### A. Standard of Review

With respect to properly preserved objections to the failure to give a requested jury instruction, this court conducts de novo review as to "whether a given instruction is, in substance,

---

[3] The jury did find, however, that McDonald was both disabled by sleep apnea during the relevant period of time in 2009 and was a "qualified individual" under the ADA.

legally correct."  Shervin v. Partners Healthcare Sys., Inc., 804 F.3d 23, 47 (1st Cir. 2015).  However, "[w]e review for abuse of discretion the particular wording chosen to convey a concept to the jury."  Id.  This inquiry, in turn, "focuses on whether the instruction 'adequately illuminate[d] the law applicable to the controverted issues in the case without unduly complicating matters or misleading the jury.'"  Id. (quoting Testa v. Wal-Mart Stores, Inc., 144 F.3d 173, 175 (1st Cir. 1998) (alteration in original)).  A district court's refusal to grant a proposed jury instruction only constitutes reversible error if it was prejudicial when evaluating the record as a whole.  See McKinnon v. Skil Corp., 638 F.2d 270, 274 (1st Cir. 1981) ("As long as the judge's instruction properly apprises the jury of the applicable law, failure to give the exact instruction requested does not prejudice the objecting party.").

### B. Events After May 12

McDonald first argues that it was prejudicial error for the district court not to have specifically instructed the jury that the Town had a continuing duty to engage in an interactive process with him and to use information that the Town learned after his May 12 termination to reasonably accommodate his disability. Here, the parties disagree over the appropriate standard of review. McDonald argues that the district court's jury instruction was incorrect as a matter of law, because the jury was not informed

- 13 -

that the Town may have a continuing duty under the ADA, post-termination, to revisit its decision in light of new information as to a former employee's disability. Therefore, and because he objected to this aspect of the jury instructions below, McDonald argues that we should conduct <u>de novo</u> review. By contrast, the Town argues that McDonald's challenge only goes to the precise wording choices made by the district court when it explained the legal framework to the jury at the close of trial, which in turn would trigger abuse of discretion review.

We think the Town has the better of this argument. Ultimately, McDonald's objection is that the jury instructions did not adequately direct the jury toward his preferred evidence: namely, the Town's behavior after it terminated McDonald on May 12, including the Town's failure to respond to McDonald's letter of May 14. The district court's decision not to include the specific language about the period of time between May 12 and the June hearing was based on the sound principle that it is not incumbent on the trial judge to, as the court below put it, "outline to the jury all the evidence" with respect to what constitutes a reasonable accommodation. While "[a] party . . . is entitled to have its legal theories on controlling issues, which are supported by the law and by the evidence, presented to the jury," <u>Sullivan</u> v. <u>Nat'l Football League</u>, 34 F.3d 1091, 1107 (1st Cir. 1994), <u>as amended on denial of reh'g</u> (Oct. 26, 1994), he or

she is not entitled to have a district court tailor the jury instructions to the most advantageous portions of the record.

Because we view McDonald's challenge in this light, we review the district court's jury instructions for abuse of discretion. Under that standard, we think the instructions "adequately illuminate[d] the law applicable to the controverted issues in the case without unduly complicating matters or misleading the jury," Shervin, 804 F.3d at 47 (quoting Testa, 144 F.3d at 175) (alteration in original)). The district court, while not including the requested language in the charge, indicated that it would be "fine for [plaintiff's counsel] to argue" the point about post-termination evidence to the jury, and he did so. Both parties presented evidence of events that took place after May 12, 2009, and argued to the jury that these events were relevant to the plaintiff's claims insofar as they shed light on whether the Town made a reasonable accommodation for McDonald's disability. The Town, for instance, argued that McDonald himself had confirmed his job abandonment at the June 2009 hearing, focusing on his failure to provide additional evidence at that hearing and pointing out that McDonald had responded affirmatively when asked whether he viewed himself as having abandoned his job. Similarly, McDonald focused on the May 14, 2009, FMLA request and the Town's failure to respond to that request. The Town countered that the May 14 request was "too little too late" given McDonald's failure to

respond to previous overtures and his failure to provide adequate medical documentation justifying his absences.

In short, what the Town knew, and when, featured prominently in the closing arguments made by both parties, as did details of McDonald's June 2009 post-termination hearing and his failure to present any mitigating evidence at that hearing. We simply find no basis in the record to conclude that, by the district judge's failure to specifically tell the jury that they could consider this evidence, the jury in turn ignored it. Because our role is to evaluate whether the jury instructions as a whole "adequately explained the law or whether they tended to confuse or mislead the jury on controlling issues," Frederico v. Order of Saint Benedict in R.I., 64 F.3d 1, 4 (1st Cir. 1995), we think the instructions met this standard, and did not confuse or mislead the jury into thinking it could only review evidence up to and including McDonald's May 12 termination. We therefore find no abuse of discretion, and no error, much less of the prejudicial variety, in the district court's decision not to adopt McDonald's proposed jury instructions on the question of the Town's post-May 12 responsibilities.

### C. Leave of Absence and Reasonable Accommodation

McDonald's second argument is that the district court committed prejudicial error by failing to instruct the jury, as he requested, that a "reasonable accommodation may include, inter

_alia_, leave of absence and leave extension; [and] additional leave beyond that allowed in leave policy." Because McDonald requested a three-month leave of absence on May 14 (two days after his termination) to resolve his sleep apnea, and because the Town never responded directly to this request, McDonald argues that the failure to specifically include additional leave time as an example of a "reasonable accommodation" for purposes of the ADA could have led the jury to conclude that leave time should not be considered when the jury deliberated as to whether the Town behaved reasonably in accommodating his disability.

We review this contention for plain error, as counsel for McDonald did not raise this objection either before or after the jury was charged. See Gray v. Genlyte Grp., Inc., 289 F.3d 128, 133-34 (1st Cir. 2002). Plain error review is designed to "prevent a clear miscarriage of justice," Romano v. U-Haul Int'l, 233 F.3d 655, 664 (1st Cir. 2000). When entertaining a challenge under plain error review, we will disturb a district court's decision only if the error "seriously affected the fairness, integrity or public reputation of judicial proceedings," id. (quoting Elgabri v. Lekas, 964 F.2d 1255, 1259 n.1 (1st Cir. 1992).

As with McDonald's argument on the question of the Town's post-termination obligations under the ADA, we discern no error, plain or otherwise, in the district court's refusal to specifically include a leave of absence as a possible accommodation that the

employer could have made available to McDonald.  There is no requirement under the ADA that a trial judge provide a jury with an exhaustive or itemized list of possible steps that the employer might take to accommodate an employee's disability.  And because there is no affirmative requirement that the district court provide such an exhaustive or itemized list, there can be no plain error.  Rather, in the context of what constitutes a reasonable accommodation under the ADA, "[e]ach case must be scrutinized on its own facts."  García-Ayala v. Lederle Parenterals, Inc., 212 F.3d 638, 648 (1st Cir. 2000).

The language in the statute itself, which the district court quoted almost verbatim in its jury instructions, indicates that the provided examples of possible accommodations are merely illustrative, not exhaustive or mandatory.  See 42 U.S.C. § 12111(9) (noting that the term "reasonable accommodation" may include making existing facilities readily accessible and usable to persons with disabilities, adjusting work schedules, reassigning a disabled employee to a vacant position, and so on).  Our cases discussing the possibility of granting additional leaves of absence for employees under the ADA also echo this fact-specific approach.  See Criado v. IBM Corp., 145 F.3d 437, 443 (1st Cir. 1998) (noting that "a leave of absence and leave extensions are reasonable accommodations in some circumstances," but "[w]hether the leave request is reasonable turns on the facts of the case.")

Additionally, while the district court did not explicitly instruct the jury that reasonable accommodations may include a leave of absence, the court did instruct the jury that it was "to determine whether the defendant, the [T]own, failed to accommodate the disabilities of the plaintiff" and that it should specifically consider "what accommodation [McDonald] requested and for what period of time" in its determination. This was sufficient to direct the jury to consider McDonald's claim that the Town failed to accommodate his disability by failing to grant him leave.

In this case, McDonald's attorney was able to argue to the jury that the Town's failure to respond to the May 14 FMLA leave request violated its duty to provide a reasonable accommodation, and nothing in the district court's jury instructions suggested that the jury could not consider the Town's response to McDonald's leave request when evaluating the employer's behavior for purposes of the ADA. We do not see how the district court's failure to specifically include a leave of absence as a further example of possible accommodations for a disabled employee constitutes clear error.

### III. Conclusion

The judgment of the district court is **affirmed.**